[Cite as *State v. Stovall*, 2019-Ohio-4287.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                        Court of Appeals No.  L-18-1048

    Appellee                                        Trial Court No.  CR201703132

v.                                                        **DECISION AND JUDGMENT**

Jamaal Ameer Stovall                          Decided:  October 18, 2019

    Appellant

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Alyssa Breyman, Assistant Prosecuting Attorney, for appellee.

Lawrence A. Gold, for appellant.

* * * * *

**OSOWIK, J.**

{¶ 1} This is an appeal from a March 8, 2018 judgment of the Lucas County Court

of Common Pleas, finding appellant guilty following a jury trial on one count of

aggravated burglary, in violation of R.C. 2911.11, a felony of the first degree, and one

count of robbery, in violation of R.C. 2911.02, a felony of the second degree.

**{¶ 2}** Appellant was sentenced to a total term of incarceration of 11 years. The record reflects that the convictions were proper. However, the record further reflects that the costs of prosecution, counsel, and confinement were imposed without consideration of appellant's present or future ability to pay. Further, restitution was not imposed in open court during sentencing, yet was included in the written sentencing entry. For the reasons set forth below, this court affirms the judgment of the trial court, in part, and reverses the judgment, in part.

**{¶ 3}** Appellant, Jamaal Stovall, sets forth the following three assignments of error:

> FIRST ASSIGNMENT OF ERROR: The trial court erred in denying appellant's rule 29 motion.

> SECOND ASSIGNMENT OF ERROR: The jury's verdict was against the manifest weight of the evidence presented at trial.

> THIRD ASSIGNMENT OF ERROR: The trial court committed error to the prejudice of appellant by ordering restitution and imposing the costs of prosecution without consideration of appellant's present or future ability to pay.

**{¶ 4}** The following undisputed facts are relevant to this appeal. On December 2, 2017, at approximately 2:00a.m., a distraught Toledo woman contacted 9-1-1 from a neighbor's residence following a fracas at her residence with appellant.

2.

{¶ 5} The victim had terminated a relationship with appellant the previous day and had instructed him not to return to her residence. Appellant failed to cooperate with her request, returned to the victim's home, and significantly exacerbated the situation.

{¶ 6} The following night, while watching television in her residence located in a duplex, the victim heard appellant pounding on her back door, angrily yelling at her to let him into the residence. The victim instructed appellant to leave, and moved a portable washing machine in front of the back door in an unsuccessful effort to prevent appellant's unlawful entry into her residence.

{¶ 7} Faced with the imminent forcible entry of her estranged boyfriend, the victim sought refuge in her bedroom. The victim then heard the sound of shattering glass, as well as other loud noises. Shortly thereafter, appellant burst into the bedroom and confronted the victim.

{¶ 8} Appellant seized the victim's mobile phone from her hand before she was able to call for help, grabbed her by her hair and shirt, and physically dragged her from the apartment while yelling, "[Y]ou ain't never gonna leave me."

{¶ 9} Appellant pulled the victim outside and began striking her with an open hand about her face, arms, and other portions of her body. The victim managed to get away, flee to a nearby residence, and telephone for emergency assistance. Appellant fled the scene.

{¶ 10} Upon their arrival, the responding police officers observed the victim outdoors in an emotionally agitated state, crying, and flagging down the officers by waving her hands and arms. The officers discovered that the victim's back door had been

3.

forced open. The portable washing machine that the victim had placed in front of the door in an attempt to block it had been knocked over onto its side.

{¶ 11} The officers discovered that although a window had been broken out, it was not appellant's entry point into the residence. As alluded to above, appellant entered via the rear door upon forcing the washing machine over and out of the way.

{¶ 12} The victim conveyed to the responding officers that appellant had broken into her home and assaulted her. The victim further relayed that she had broken up with appellant the previous day and had told him not to return to her residence.

{¶ 13} The record reflects that between December 15, 2017, the date of appellant's arrest, and March 6, 2018, the day appellant's jury trial commenced, appellant relentlessly telephoned the victim, an astonishing 469 times.

{¶ 14} The victim conceded at trial that despite the above-described events she still loved appellant and had continued to give him money following this incident. The victim further disclosed at trial that during appellant's numerous communications with the victim prior to trial, and during the trial itself, appellant urged the victim not to appear at court, to request that appellant's case be dismissed in writing, and if the case went forward, to be untruthful at trial in order to protect appellant from the consequences of his conduct.

{¶ 15} Consistent with the above, the victim testified that she had been arrested on a material witness warrant, was reluctant to come to court, and was fearful of testifying against appellant.

4.

{¶ 16} Despite their tumultuous on-again off-again relationship, and despite appellant's considerable efforts to convince the victim to undermine appellant's prosecution, the victim did unequivocally testify at trial that on December 2, 2017, appellant forcibly entered her home, forcibly pried her mobile phone from her hands to prevent her from calling 9-1-1, and physically assaulted her.

{¶ 17} The victim testified that, "[Appellant] just – just grabbed me, like, just started grabbing me and dragging me." The victim further testified that when appellant saw her mobile phone in her hand he, "[J]ust took it from me, like, you're not gonna call nobody. And then I couldn't call nobody." The victim proceeded to testify in detail regarding appellant grabbing her by the hair, dragging her outside, and repeatedly striking her with an open hand, leaving multiple bruises.

{¶ 18} In addition to the victim's direct testimony, the responding and investigating police officers likewise gave unrefuted testimony collaborating these events. The officers testified about discovering the crying, emotionally agitated victim outside her residence. The officers testified that the victim conveyed to them that appellant had unlawfully forced his way into her home. The officers conveyed that the victim further disclosed to them that appellant stole her mobile phone, assaulted her, and then fled. The officers also testified that they observed injuries and markings on the victim consistent with the events that she had described.

{¶ 19} At the conclusion of the two-day jury trial, appellant was convicted on both of the offenses, aggravated burglary and robbery. On March 8, 2018, the trial court

5.

sentenced appellant to a total term of incarceration of 11 years. On March 9, 2018, a notice of appeal was filed.

{¶ 20} In the first assignment of error, appellant asserts that the trial court erred in denying appellant's Crim.R. 29 motion for acquittal. We do not concur.

{¶ 21} It is well-established that appellate court consideration on direct appeal of a disputed denial of a Crim.R. 29 motion constitutes a challenge to the sufficiency of the evidence.

{¶ 22} Accordingly, the appellate court must determine whether, after reviewing the evidence presented in the light most favorable to the prosecution, any rational trier of fact could have found the elements of the offenses proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 23} As applied to the instant case, R.C. 2911.11(A) defines, in relevant part, aggravated burglary as, "No person, by force, stealth, or deception, shall trespass in an occupied structure * * * when another person * * * is present, with purpose to commit * * * any criminal offense, if * * * the offender inflicts or attempts or threatens to inflict physical harm on another."

{¶ 24} R.C. 2911.02(A)(2) defines, in relevant part, robbery as, "No person, in attempting or committing a theft offense * * * shall * * * inflict, attempt to inflict or threaten to inflict harm on another."

{¶ 25} We have carefully reviewed and considered the record of evidence in this matter. The record reflects that, despite the victim's reluctance to cooperate in this matter

6.

and history of involvement with appellant, the victim nevertheless furnished convincing and unrefuted testimony demonstrating that on December 2, 2017, appellant came to her residence in contravention of her explicit request that he stay away, forced his way inside, stole her phone, and then assaulted her.

{¶ 26} Specifically, the record reflects that appellant forced his way inside by knocking over a washing machine that was placed as a barricade, snatched the victim's mobile phone from her person, grabbed the victim by her hair and clothes, dragged her from the residence, and physically assaulted her with an open hand prior to her escape.

{¶ 27} Given this unrefuted, ample evidence, we find that a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could find that appellee had successfully proven offenses of aggravated burglary and robbery, as defined by R.C. 2911.11(A) and 2911.02(A)(2).

{¶ 28} Accordingly, we find that the trial court's denial of appellant's Crim.R. 29 motion for acquittal was proper. We find appellant's first assignment of error not well-taken.

{¶ 29} In the second assignment of error, appellant similarly contends that the convictions were against the manifest weight of the evidence. We do not concur.

{¶ 30} The applicable standard of review on a manifest weight of the evidence challenge is the same in a criminal case as it is in a civil one. The function of the appellate court is to determine whether, in reviewing the record, weighing the evidence and all reasonable inferences, considering witness credibility, and in resolving conflicts

7.

in the evidence, the trier of fact clearly lost its way so as to cause a manifest miscarriage of justice such that a new trial must be ordered. *State v. Prescott*, 190 Ohio App.3d 702, 2010-Ohio-6048, 943 N.E.2d 1092, ¶ 48 (6th Dist.).

{¶ 31} As stated above, we find that the record of evidence irrefutably demonstrates that on December 2, 2017, appellant forced open the blocked rear door of the victim's residence, knocking over a washing machine, stole the victim's mobile phone from her, physically assaulted the victim, and then fled. The underlying aggravated burglary and robbery convictions were not against the manifest weight of the evidence.

{¶ 32} The record is devoid of any evidence demonstrating that the trial court lost its way such that the disputed verdicts constitute a manifest miscarriage of justice. Accordingly, we find appellant's second assignment of error not well-taken.

{¶ 33} In appellant's third assignment of error, appellant maintains that the trial court erred in connection to restitution and in its consideration pertaining to the imposition of the costs of prosecution, counsel, and confinement. We concur.

{¶ 34} With respect to the issue of restitution, R.C. 2929.18(A)(1) establishes that, "If the court imposes restitution, the court shall order that the restitution be made to the victim *in open court*." (Emphasis added).

{¶ 35} The record reflects, and appellee concedes, that the trial court did not address restitution in open court at the sentencing hearing despite subsequently including restitution in the written sentencing entry.

8.

{¶ 36} With respect to the imposition of costs, the record reflects, and appellee concedes, that the trial court did not discuss or place anything in the record reflecting that the court considered appellant's present or future ability to pay prior to the inclusion of the imposition of the costs of prosecution, counsel, and confinement in the written sentencing entry.

{¶ 37} As previously held by this court, when the record on appeal contains no evidence reflecting trial court consideration of present or future ability to pay the costs, such as consideration of appellant's age, health, employment history, or level of education, the imposition of the costs of counsel or confinement is improper and is vacated. *State v. Wymer*, 6th Dist. Lucas No. L-18-1108, 2019-Ohio-1563, ¶ 15.

{¶ 38} However, when appellant has not moved the trial court for a waiver of the costs of prosecution, as is the case in the matter before us, the imposition of the costs of prosecution is not improper regardless of indigency considerations given the costs of prosecution mandate established by R.C. 2947.23(A)(1)(a). *Wymer* at ¶ 13.

{¶ 39} Based upon these errors in connection to restitution and costs, we find appellant's third assignment of error well-taken.

{¶ 40} On consideration whereof, this court affirms the trial court judgment, in part, and reverses it, in part. The convictions are hereby affirmed, the portion of the sentencing entry pertaining to the imposition of the costs of prosecution is hereby affirmed, the portions of the sentencing entry pertaining to the imposition of the costs of counsel and the costs of confinement are hereby vacated, and the matter is remanded to

9.

the trial court to properly address the imposition of restitution in open court, as mandated by R.C. 2929.18(A)(1).  Appellant and appellee are each ordered to pay one-half of the costs of this matter pursuant to App.R. 24.

Judgment affirmed, in part,
and reversed, in part.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Arlene Singer, J.                                                  _____

JUDGE

Thomas J. Osowik,  J.


Gene A. Zmuda, J.                                              _____

JUDGE

CONCUR.


_____

JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.