**[Cite as *State v. Brown*, 2020-Ohio-1650.]**

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

| | |
|---|---|
| State of Ohio | Court of Appeals No. L-18-1140 |
| Appellee | Trial Court No. CR0201702787 |
| v. | |
| Billy Brown | **DECISION AND JUDGMENT** |
| Appellant | Decided: April 24, 2020 |

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Alyssa Breyman, Assistant Prosecuting Attorney, for appellee.

Karin L. Coble, for appellant.

* * * * *

**MAYLE, J.**

{¶ 1} Following a jury trial, defendant-appellant, Billy Brown, appeals the

June 15, 2018 judgment of the Lucas County Court of Common Pleas, convicting him of

failure to comply with an order or signal of a police officer, resisting arrest, and assault.

For the following reasons, we affirm, in part, and reverse, in part.

## I. Background

{¶ 2} William Shaner and Robert Reed are sergeants assigned to the Toledo Police Department's SWAT unit.[1] On June 29, 2017, they were conducting surveillance of a gas station located in what they described as a high-crime area. The sergeants initiated a stop of Billy Brown's pickup truck after allegedly observing Brown squeal his tires while exiting the gas station parking lot and turn without signaling. They also noticed equipment violations including a crack in the truck's windshield and the absence of a front license plate.

{¶ 3} Shaner approached Brown's driver-side window and Reed approached the passenger side, where Brown's adult son, Avery Parker, was seated. Reed told Parker to place his hands on the dashboard. Shaner asked to see Brown's driver's license. Brown told him that he did not have it with him, so Shaner ordered Brown out of the vehicle. Brown questioned why he was being asked to exit the vehicle, at which point Shaner started threatening to take him to jail. When Brown did not exit the truck of his own volition, Shaner opened the door and attempted to forcibly remove him. Brown struggled to resist being dragged out of his truck. After pulling Brown to his feet, Shaner twice used his taser on him.

{¶ 4} At that point, Brown reentered the truck cab. Brown argues that he involuntarily fell back into the truck cab as a result of being shocked by the taser, and the

---

[1] Reed was not yet a sergeant at the time of the incident giving rise to this case.

state claims that he intentionally got back into the vehicle. On the video, Brown appears to climb back into a seated position behind the wheel and then reach out to shut the door, but Shaner is in the way. Shaner then resumed efforts to remove him and Brown continued to struggle, flail, and kick to avoid being removed from the truck. He repeatedly yelled that he has a bad back and bad knees and cried, "why are you hitting me?" Shaner ultimately succeeded in pulling him out of the truck cab, punched him several times, forced him to the ground, punched him several more times, kneeled on his neck and back to hold him down, and handcuffed him.[2] Paramedics arrived to evaluate Brown following the taser use, and Brown was transported to St. Vincent Mercy Medical Center for evaluation. He suffered lacerations and bruises.

{¶ 5} It was eventually determined that Brown had a valid driver's license and there were no warrants for his arrest. The vehicle was properly registered to him and it was insured. After searching his vehicle, no contraband was discovered.

{¶ 6} On October 13, 2017, Brown was indicted for (1) failure to comply with an order or signal of a police officer, a violation of R.C. 2921.331(A) and (C)(1)(2), a first-degree misdemeanor (Count 1); (2) resisting arrest, a violation of R.C. 2921.33(B) and (D), a first-degree misdemeanor (Count 2); and (3) assault, a violation of R.C. 2903.13(A) and (C)(5), a fourth-degree felony (Count 3). The case was tried to a jury and Brown was convicted of all three counts. He was sentenced to a suspended jail term

---

[2] The law enforcement officials who testified referred to this conduct as "stun techniques."

3.

of 180 days at the Corrections Center of Northwest Ohio ("CCNO") on Counts 1 and 2, and a three-year period of probation. As to Count 3, Brown was ordered to serve three years' community control, including 60 days' commitment at CCNO and 120 days' electronic monitoring, and three years' discretionary postrelease control. The court also imposed the costs of supervision, confinement, assigned counsel, and prosecution, and costs assessed under R.C. 9.92(C), 2929.18, and 2951.021.

{¶ 7} Brown appealed and assigns the following errors for our review.

Assignment of Error One: Defense counsel rendered ineffective assistance of counsel, depriving appellant of Due Process in violation of the Sixth Amendment to the U.S. Constitution and Article I, Section 10 of the Ohio Constitution, by failing to request jury instructions on the affirmative defense of excessive and unnecessary force.

Assignment of Error Two: Brown's convictions are unsupported by sufficient evidence and are against the manifest weight of the evidence.

Issue One: The conviction for resisting arrest should be vacated.

Issue Two: The conviction for assault should be vacated.

Assignment of Error Three: The convictions for assault and resisting arrest should have merged because they are allied offenses of similar import.

Assignment of Error Four: The trial court failed to impose costs at the sentencing hearing in violation of Crim.R. 43 and failed to find

appellant had the ability to pay costs, rendering the imposition of costs invalid.

## II.  Law and Analysis

{¶ 8} In his first assignment of error, Brown argues that with respect to his conviction for resisting arrest, trial counsel was ineffective for failing to request a jury instruction on the affirmative defense of excessive and unnecessary force.  In his second assignment of error, he argues that his convictions for resisting arrest and assault were not supported by sufficient evidence and were against the manifest weight of the evidence.  In his third assignment of error, Brown argues that his convictions for assault and resisting arrest should have merged for purposes of sentencing.  And in his fourth assignment of error, he argues that the trial court improperly imposed costs.

{¶ 9} We consider Brown's assignments of error out of order.

### A.  Sufficiency and manifest weight

{¶ 10} In his second assignment of error, Brown challenges the sufficiency of his resisting-arrest and assault convictions, and he argues that his convictions were against the manifest weight of the evidence.  Whether there is sufficient evidence to support a conviction is a question of law.  *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).  In reviewing a challenge to the sufficiency of evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." (Internal citations omitted.)  *State v. Smith*, 80 Ohio

5.

St.3d 89, 113, 684 N.E.2d 668 (1997). In making that determination, the appellate court will not weigh the evidence or assess the credibility of the witnesses. *State v. Walker*, 55 Ohio St.2d 208, 212, 378 N.E.2d 1049 (1978).

{¶ 11} When reviewing a claim that a verdict is against the manifest weight of the evidence, the appellate court must weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether the jury clearly lost its way in resolving evidentiary conflicts so as to create such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins* at 387. We do not view the evidence in a light most favorable to the state. "Instead, we sit as a 'thirteenth juror' and scrutinize 'the factfinder's resolution of the conflicting testimony.'" *State v. Robinson*, 6th Dist. Lucas No. L-10-1369, 2012-Ohio-6068, ¶ 15, citing *Thompkins* at 388. Reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

*1. Resisting arrest*

{¶ 12} Under R.C. 2921.33(B), "[n]o person, recklessly or by force, shall resist or interfere with a lawful arrest of the person or another person and, during the course of or as a result of the resistance or interference, cause physical harm to a law enforcement officer." "An arrest occurs when the following four requisite elements are involved: (1) [a]n intent to arrest, (2) under a real or pretended authority, (3) accompanied by an actual or constructive seizure or detention of the person, and (4) which is so understood

6.

by the person arrested." (Internal citations omitted.) *State v. Darrah*, 64 Ohio St.2d 22, 26, 412 N.E.2d 1328 (1980). Accordingly, before a person may be convicted of resisting arrest, it must be shown that the offender understood that he was under arrest. *State v. Deer*, 6th Dist. Lucas No. L-06-1086, 2007-Ohio-1866, ¶ 33.

{¶ 13} Brown argues that Shaner did not tell him that he was under arrest until well after he resisted, therefore, the state failed to establish that he understood that he was being arrested. The state argues that while Shaner did not use the "magic" words "you are under arrest," the evidence demonstrates that Brown knew, or reasonably should have known, that he was under arrest after he repeatedly failed to comply with Shaner's order to exit the vehicle.

{¶ 14} We have reviewed the recording of the stop. At times, it is difficult to understand what is being said because the microphone is on Reed, who is at the passenger side of the vehicle, and Shaner, Reed, Brown, and Parker often talk over one another. But from what we are able to discern, Shaner asked Brown to get out of the car. Brown asked Shaner why he was asking him to get out of the car. Shaner responded: "Here's the thing, Mr. Brown, you're going to go to jail. You don't have a license. I asked you to step out of the car." Brown insisted to Shaner that his license is valid. Shaner told him: "I'm going to tell you one more time to step out of the car, and then you're coming out of the car my way. Do you understand that?" Brown asked: "So you're going to do it that way?" Shaner replied that he *was* going to do it that way. He again ordered Brown to step out of the car. Brown's response is unintelligible, but at that point, Shaner

7.

opened the door to drag Brown out of the truck. Brown struggled to avoid being forced out of the vehicle, shouting "You're not arresting me tonight." Shaner responded: "I am going to arrest you." Brown continued to struggle.

{¶ 15} We conclude that Shaner communicated his intent to arrest Brown if he did not voluntarily alight from the truck. Brown's words—"you're not arresting me tonight"—coupled with his vehement attempts to avoid being pulled out of the vehicle demonstrate his understanding that Shaner's intent was to arrest him. We find that the state offered sufficient evidence of this element of the offense.

{¶ 16} Having said this, while not specifically argued by Brown, we find that Brown's resisting-arrest conviction lacks sufficient evidence as to a different element of the offense. And, given that Brown specifically assigned as error that the evidence presented by the state was insufficient to sustain his conviction, it is appropriate for us to consider whether the state presented sufficient evidence as to each element of the offense. *See State v. Wilson*, 5th Dist. Muskingum No. CT 2005-0031, 2006-Ohio-3541, ¶ 10 (finding appellant's assignment of error well-taken, but for reasons other than that argued by appellant). Moreover, as this court recognized in *State v. Messer*, 6th Dist. Lucas No. L-16-1109, 2017-Ohio-1223, ¶ 18, "a conviction based on legally insufficient evidence amounts to a denial of due process and is plain error requiring reversal." *See also Perrysburg v. Miller*, 153 Ohio App.3d 665, 2003-Ohio-4221, 795 N.E.2d 690, ¶ 57 (6th Dist.) ("A conviction based on legally insufficient evidence constitutes a denial of due

8.

process, and should therefore be overturned." (Internal citations and quotations omitted.)).

{¶ 17} A person may be charged with resisting arrest under either R.C. 2921.33(A) or 2921.33(B). Under R.C. 2921.33(A), "[n]o person, recklessly or by force, shall resist or interfere with a lawful arrest of the person or another." But Brown was not charged under R.C. 2921.33(A)—he was charged under R.C. 2921.33(B). Under R.C. 2921.33(B), "[n]o person, recklessly or by force, shall resist or interfere with a lawful arrest of the person or another person and, during the course of or as a result of the resistance or interference, *cause physical harm to a law enforcement officer*." (Emphasis added.) Subsections (A) and (B) differ only in that subsection (B) adds the element that in the course of resisting, physical harm is caused to a law enforcement officer. *Middleburg Hts. v. Lasker*, 2016-Ohio-5522, 76 N.E.3d 372, ¶ 24 (8th Dist.). This added element increases the offense from a second-degree misdemeanor to a first-degree misdemeanor. *Id.*; R.C. 2921.33(C).

{¶ 18} "Physical harm" is defined in R.C. 2901.01(A)(3) as "any injury, illness, or other physiological impairment, regardless of its gravity or duration." There has been no claim that Shaner suffered illness or physical impairment as a result of Brown's conduct; rather, the state claims that Shaner suffered "injury." "Injury" is not defined in Chapter 29 of the Ohio Revised Code, therefore, the term is accorded its common, ordinary meaning. *Lucas Cty. Pit Crew v. Fulton Cty. Dog Warden*, 6th Dist. No. F-16-003,

9.

2016-Ohio-8526, 79 N.E.3d 1244, ¶ 21-23.  Merriam-Webster defines "injury" as "an act that damages or hurts."  *See* https://www.merriam-webster.com/dictionary/injury (accessed Nov. 13, 2019).

{¶ 19} On direct examination, in an attempt to elicit evidence as to this element, the state's attorney asked Shaner to describe what happened after Brown got back into his vehicle:

Q:  What happened next?

A:  * * *  [A]s I go into the driver's door, he rears back and kicks me in the stomach.

Q:  And you said he kicked you in the stomach?

A:  Yes, ma'am.

Q:  And that blow landed?

A:  It did, yes.

Q:  *Did it hurt?*

A:  It didn't feel pleasant, *no*.

(Emphasis added.)

{¶ 20} The definitions of "physical harm" and "injury" convince us that there must be some manifestation of harm to the officer, whether it be in the form of a visible or objective injury, or in the form of pain.  Taken literally, Shaner's response evidences neither.  It is possible that Shaner misspoke or was simply being glib in his response to the question by the state's attorney.  But it is equally possible that it, in fact, *did not* hurt

when Brown kicked him—especially since, according to Shaner's testimony, he was wearing a bulletproof vest when the struggle occurred. Either way, "physical harm" is a required element of R.C. 2921.33(B) that must be proven. The state's options were to ensure that it elicited clear, credible, evidence of physical harm, or to pursue a conviction against Brown for the lesser offense under R.C. 2921.33(A).

{¶ 21} In *Lasker*, 2016-Ohio-5522, 76 N.E.3d 372, at ¶ 24, for instance, the defendant's resistance to his arrest caused officers to fall to the ground as they tried to subdue him. Nevertheless, the court concluded—and the state conceded—that there was insufficient evidence to support a conviction under R.C. 2921.33(B) because the state failed to present evidence that the officers were injured. The court held, therefore, that while the defendant could be convicted of the lesser-included offense of resisting arrest under R.C. 2921.33(A), there was insufficient evidence to support a conviction under subsection (B).

{¶ 22} "It didn't feel pleasant," followed by "no" when asked "did it hurt?" is simply not sufficient evidence that Brown injured Shaner. To be clear, we do not conclude that an officer must seek medical treatment or miss work for the state to prove the "physical harm" element of R.C. 2921.33(B). *See State v. Smith*, 9th Dist. Summit No. 23554, 2007-Ohio-5673, ¶ 21 ("R.C. 2921.33(B) does not require that the officer seek medical treatment in order for a person to be found guilty of resisting arrest."); *see also State v. Cole*, 2d Dist. Miami No. 2009 CA 20, 2010-Ohio-1608, ¶ 27 (finding sufficient evidence of physical harm where officer's knee was "red and a little sore" after

11.

being kicked by defendant, even though he did not have trouble walking, did not seek medical attention, and did not miss work). But we do find that there must be *some* manifestation of injury or "physiological *impairment*."[3] Here, only physical *contact* was demonstrated—not physical *harm*.[4]

{¶ 23} In sum, Shaner's testimony falls short of proving the "physical harm" element of the offense. We, therefore, agree with Brown that the evidence was insufficient to sustain his conviction under R.C. 2921.33(B), albeit for different reasons than those asserted in his brief. We find his second assignment of error well-taken as it pertains to his resisting-arrest conviction. His conviction for resisting arrest under R.C. 2921.33(B) must be vacated. This conclusion renders moot Brown's first and third assignments of error.

---

[3] The cases cited in the dissenting opinion are distinguishable. In *In re Matter of Goretzki*, 6th Dist. Erie No. E-93-48, 1994 WL 39053, *1 (Feb. 11, 1994), the victim's hair was *burned off* by a blowtorch. In *State v. Conliff*, 61 Ohio App.2d 185, 187, 401 N.E.2d 469 (10th Dist.1978), the jury *unanimously acquitted* the defendant of assault. In *City of Columbus v. Bonner*, 10th Dist. Franklin No. 81AP-161, 1981 WL 3356, *1 (July 21, 1981), the victim testified that the defendant twisted the camera strap that was around her neck, *choking her*. And in *State v. Hustead*, 83 Ohio App.3d 809, 810, 615 N.E.2d 1081 (4th Dist.1992), the victim "*grimaced and moaned*" in pain after being slapped by the defendant. (Emphasis added.)

[4] To be clear, if in response to the assistant prosecutor's question "did it hurt?", Sergeant Shaner had simply, clearly responded "yes," this would have been sufficient evidence of the physical harm element of the offense. He did not. Moreover, such testimony would have been sufficient *even though* the video of the incident "barely supports contact between Brown's foot and Shaner's midsection," as the concurring opinion correctly states.

12.

## 2. *Assault*

{¶ 24} R.C. 2903.13(A) provides that "[n]o person shall knowingly cause or attempt to cause physical harm to another or to another's unborn." Under R.C. 2903.13(A)(5), "[i]f the victim of the offense is a peace officer * * *, while in the performance of their official duties, assault is a felony of the fourth degree." Brown argues that his assault conviction is not supported by sufficient evidence and is against the manifest weight of the evidence because the state failed to show that he "knowingly" caused or attempted to cause physical harm to Shaner.

{¶ 25} Shaner testified that Brown kicked him in the stomach, and this can clearly be seen in the recording from the stop. But Brown claims that he did not knowingly kick Shaner; rather, his leg involuntarily "flailed out of the truck" as a result of being tased. Citing *In re S.C.W.*, 9th Dist. Summit No. 25421, 2011-Ohio-3193, ¶ 23, he argues that "incidental and accidental conduct cannot support a conviction for knowingly causing or attempting to cause physical harm."

{¶ 26} R.C. 2901.22(B) provides that "[a] person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." Courts have recognized that "[w]hether a person acts knowingly can only be determined, absent an admission, from the surrounding facts and circumstances, including the doing of the act itself." *In re S.C.W.*, 9th Dist. Summit No. 25421, 2011-Ohio-3193, ¶ 18. It is a subjective determination, but it is decided on objective criteria. *Id.*

13.

{¶ 27} The state presented Shaner's testimony in support of its position that Brown's movements were purposeful. Shaner acknowledged that he tased Brown. But Shaner explained that based on his observations and experience, when a taser is employed and is effective, it creates "more of a paralysis than a wild flailing about." He testified—and the recording appears to show—that after being tased, rather than being paralyzed, Brown turned, climbed into the vehicle, tried to pull the door shut, and then intentionally kicked at him. Shaner concluded that the taser must have been ineffective, and he attributed this to the fact that he and Brown were standing so close to one another that "the probes didn't have any room to spread out."

{¶ 28} Here, construing the evidence in favor of the state—as we are required to do when considering a sufficiency challenge—we conclude that if believed by the jury, this evidence was sufficient to support the "knowingly" element of the offense.

{¶ 29} Turning to Brown's manifest weight challenge, defense counsel cross-examined Shaner, Reed, and Detective Peter Siwa in an effort to show that instead of causing paralysis, the shock of being tased may cause a person's limbs to flail. Brown presented the testimony of his son, who testified that his dad "fell back up in the truck" after being tased, and his body reacted uncontrollably. And Brown testified that the taser was effective, and after being tased, he "fell head-forward inside [his] truck with [his] legs hanging out. He denied knowingly kicking Shaner, claiming instead that Shaner "approached" him and "came in contact with" his feet. And he suggested that the recording of the stop had been altered.

14.

{¶ 30} Although under a manifest-weight standard we consider the credibility of witnesses, we must nonetheless extend special deference to the jury's credibility determinations given that it is the jury who has the benefit of seeing the witnesses testify, observing their facial expressions and body language, hearing their voice inflections, and discerning qualities such as hesitancy, equivocation, and candor. *State v. Fell*, 6th Dist. Lucas No. L-10-1162, 2012-Ohio-616, ¶ 14.

{¶ 31} Here, the jury had before it the witnesses' testimony. It also had before it the recording of the stop, which appears to corroborate the state's claim that Brown deliberately climbed back in the truck, tried to shut the door, and kicked at Shaner. It was ultimately for the jury to determine whether it believed the state's version of events or Brown's. It chose to believe the state's version. We cannot say that the jury's credibility determinations were against the manifest weight of the evidence or that this is the exceptional case in which the evidence weighs heavily against the conviction.

{¶ 32} Accordingly, we find Brown's second assignment of error not well-taken as it pertains to his assault conviction.

## B. Costs

{¶ 33} At the sentencing hearing, the trial court notified Brown that it was imposing costs of prosecution. Nevertheless, the judgment entry states that "Defendant found to have, or reasonably may be expected to have, the means to pay all or part of the applicable costs of supervision, confinement, assigned counsel, and prosecution as authorized by law. * * * Defendant further ordered to pay the cost [sic] assessed pursuant

15.

to R.C. 9.92(C), 2929.18 and 2951.021. Notification pursuant to R.C. 2947.23 given." In his fourth assignment of error, Brown argues that the trial court failed to impose costs at the sentencing hearing in violation of Crim.R. 43, and failed to find that Brown had the ability to pay costs, rendering the imposition of costs invalid.

{¶ 34} Our standard of review on this issue is whether the imposition of costs was contrary to law. R.C. 2953.08(A)(4) and (G)(2)(b); *State v. Farless*, 6th Dist. Lucas Nos. L-15-1060 and L-15-1061, 2016-Ohio-1571, ¶ 4, citing *State v. Collins*, 12th Dist. Warren No. CA2014-11-135, 2015-Ohio-3710, 41 N.E.3d 899, ¶ 30 ("An appellate court may not modify a financial sanction unless it finds by clear and convincing evidence that it is not supported by the record or is contrary to law.").

{¶ 35} Brown concedes that the costs of prosecution are mandatory. He asks this court to vacate all *non-mandatory* costs. We must, therefore, determine which costs are mandatory and which are "non-mandatory."

{¶ 36} We have previously held that "like prosecution costs, 'fees permitted pursuant to R.C. § 2929.18(A)(4)' are mandatory costs" not conditioned on an offender's ability to pay. *State v. Lantz*, 6th Dist. Fulton No. F-18-011, 2019-Ohio-3307, ¶ 18. Similarly, costs imposed under R.C. 9.92(C)—which is a one-dollar cost allocated to the citizen's reward program—are mandatory and not conditioned on an offender's ability to pay. *State v. Maloy*, 6th Dist. Lucas No. L-10-1350, 2011-Ohio-6919, ¶ 12.

{¶ 37} But unlike the costs of prosecution and costs under R.C. 9.92(C) and 2929.18(A)(4), the trial court *may* impose the costs of supervision, confinement, or

16.

assigned counsel, and if it does, it must affirmatively find that the defendant has, or reasonably may be expected to have, the ability to pay. *State v. Gray*, 6th Dist. Lucas No. L-15-1072, 2015-Ohio-5021, ¶ 21; *State v. Wymer*, 6th Dist. Lucas No. L-18-1108, 2019-Ohio-1563, ¶ 14. While the court need not conduct a formal hearing as to the defendant's ability to pay these costs, a finding of his ability to pay must be supported by clear and convincing evidence in the record. *Id.* When the record on appeal contains no evidence reflecting the trial court's consideration of present or future ability to pay these costs—such as consideration of defendant's age, health, employment history, or level of education—the imposition of these costs is improper and must be vacated. *State v. Stovall*, 6th Dist. Lucas No. L-18-1048, 2019-Ohio-4287, ¶ 37.

{¶ 38} Here, the court did not notify Brown that it was imposing the costs of supervision, confinement, or assigned counsel. Additionally, there is nothing in the record to support the trial court's finding in its judgment entry that Brown is now, or will be in the future, able to pay these costs. The evidence in the record indicates that Brown is 55 years old and has a college degree, however, it also indicates that he is in the midst of bankruptcy and divorce proceedings and has ongoing medical issues. We find that the record lacks clear and convincing evidence of Brown's ability to pay. We, therefore, vacate the imposition of supervision costs, confinement costs, and assigned counsel costs—i.e., "non-mandatory" costs.

{¶ 39} In sum, we affirm, in part, and reverse, in part, Brown's fourth assignment of error. We affirm the imposition of prosecution costs, costs imposed under R.C.

17.

9.92(C), and costs imposed under R.C. 2929.18(A)(4). We vacate all other costs imposed. *See State v. Phillips*, 6th Dist. Wood No. WD-16-020, 2017-Ohio-7107, ¶ 70 (vacating costs of confinement and appointed counsel fees); *Stovall*, 6th Dist. Lucas No. L-18-1048, 2019-Ohio-4287, at ¶ 37; *State v. Wymer*, 6th Dist. Lucas No. L-18-1108, 2019-Ohio-1563, ¶ 17.

### III. Conclusion

{¶ 40} We find Brown's second assignment of error well-taken, in part, and not well-taken, in part. We affirm his assault conviction. But because we find that the state failed to present sufficient evidence of the "physical harm" element under R.C. 2921.33(B), we vacate his resisting-arrest conviction. Our conclusion with respect to the resisting-arrest conviction renders moot Brown's first and third assignments of error.

{¶ 41} We find Brown's fourth assignment of error well-taken, in part, and not well-taken, in part. We affirm the court's imposition of mandatory costs— prosecution costs, costs imposed under R.C. 9.92(C), and costs imposed under R.C. 2929.18(A)(4)— but we reverse and vacate the court's imposition of costs that the court is not required to impose—supervision costs, confinement costs, and assigned counsel costs.

{¶ 42} Accordingly, we affirm, in part, and reverse, in part, the June 15, 2018 judgment of the Lucas County Court of Common Pleas. Brown and the state are ordered to share the costs of this appeal under App.R. 24.

Judgment affirmed, in part,
and reversed, in part.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Christine E. Mayle, J.

_____
JUDGE

Gene A. Zmuda, P.J.
CONCURS AND WRITES
SEPARATELY.

_____
JUDGE

Thomas J. Osowik, J.
DISSENTS AND WRITES
SEPARATELY.

**ZMUDA, P.J.**

**{¶ 43}** Because I agree with the majority's ultimate determination, vacating the conviction for resisting arrest, but would clarify the findings regarding the evidentiary record, I write separately.

{¶ 44} Brown challenged his conviction for resisting arrest, in violation of R.C. 2921.33(B), arguing the state failed to establish that he understood Sergeant Shaner was placing him under arrest at the time he refused to comply with Shaner's order to exit the vehicle. The majority found this argument lacked any support in the record, but did find insufficient evidence based on argument never directly raised by Brown, the requirement that an offender "cause physical harm to a law enforcement officer." R.C. 2921.33(B).

{¶ 45} As noted by the majority, R.C. 2901.01(A)(3) defines "physical harm" as "any injury, illness, or other physiological impairment, regardless of its gravity or duration." The majority determined, however, without any argument by Brown, that the state failed to demonstrate evidence of "any injury." At trial, the jury viewed the video of the incident, and Shaner testified that Brown kicked him in the stomach, landing the blow. In response to the question, "Did it hurt?" Shaner stated, "It didn't feel pleasant, no." The majority construed this statement to mean the kick to the stomach was unpleasant and did not hurt. It is just as likely the jury received this statement as an indication the blow did not feel pleasant, with added emphasis, as in "no (it did not feel pleasant at all.)" While the outcome remains unchanged, I would not extend review of the record to parsing words in transcripts, without the benefit of seeing and hearing the testimony, with its attendant nuance and expression.

{¶ 46} I also hesitate to address an issue never raised by the parties, but agree that—in this case—the circumstances require we do so. While not prohibited, an appellate court will not generally raise an issue sua sponte. "In fairness to the parties, a

20.

Court of Appeals which contemplates a decision upon an issue not briefed should * * * give the parties notice of its intention and an opportunity to brief the issue." *C. Miller Chevrolet, Inc. v. City of Willoughby Hills*, 38 Ohio St.2d 298, 301, 313 N.E.2d 400 (1974), fn. 3; *see also State v. Tilman*, 6th Dist. Lucas No. L-16-1153, 2017-Ohio-2908, ¶ 12 ("In the interest of fairness, an appellate court will generally not review unassigned error without giving the parties an opportunity to brief the issues."). Here, however, the video of the incident provides very clear evidence, that when combined with trial testimony, negates the element of physical harm to the officer, a necessary element for a resisting arrest conviction, charged under R.C. 2921.33(B).

{¶ 47} Before we may find that the state failed to satisfy the "physical harm" element of R.C. 2921.33(B), we must construe the evidence most favorably for the state and conclude that reasonable minds could only find that the evidence does not demonstrate physical harm beyond a reasonable doubt. *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997), citing *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 48} Here, the jury viewed the video of the incident, showing Brown aim an ineffective kick toward Shaner's midsection as Shaner engaged in a forceful removal of Brown from his vehicle. Shaner testified that the kick landed, but when asked if he felt pain, he articulated only discomfort or annoyance, saying, "It didn't feel pleasant." The video demonstrates—at best—a glancing blow. The video, essentially, belies Shaner's testimony of a "landed blow," as Shaner can be seen turning to avoid contact, with no

21.

energy from the kick causing Shaner to move in reaction. The record, accordingly, barely supports contact between Brown's foot and Shaner's midsection, let alone a physical injury.

{¶ 49} Where the evidence demonstrates a blow with sufficient force to cause an officer to stumble backwards one or two steps, courts have found sufficient evidence of physical harm, even without testimony of pain. *See, e.g., City of Columbus v. Lipsey*, 10th Dist. Franklin Nos. 90AP-543, 90AP-544, 1991 WL 34918, *2 (Mar. 12, 1991) ("[A] reasonable jury could conclude that the force required to cause a police officer to fall backwards carried with it the inherent temporary discomfort associated with such force."). The state asked Shaner about his pain, however, to which he only testified regarding unpleasantness. Courts have been unwilling to find physical harm based on "any discomfort, however trivial," and have required some evidence of pain. *See, e.g., State v. Hill*, 2d Dist. Montgomery No. 20678, 2005-Ohio-3701, ¶ 34 (where victim did not appear affected by a punch to the gut, and merely testified that the punch "hurt," physical harm element of assault was satisfied).

{¶ 50} To support the physical harm element for assault in violation of R.C. 2921.33(B), there must be some evidence of injury. With no visible sign of injury, no evidence demonstrating a forceful blow, and no testimony of pain or hurt, the jury had no evidence to satisfy this element. Therefore, I agree with the majority's determination that the resisting arrest conviction lacked sufficient evidentiary support. Accordingly, I respectfully concur with the majority's decision.

22.

**OSOWIK, J.**

{¶ 51} Following a period of considerable deliberations over the majority and concurring opinions in this matter, I ultimately reach the inescapable conclusion that despite my predominant agreement with the substance of the concurrence, I diverge regarding its ultimate conclusion. Accordingly, I must dissent in this matter as it relates to appellant's second assignment of error.

{¶ 52} Contrary to the separate opinions set forth by this court in this case, I find that the record does contain sufficient evidence for the jury to conclude that the requisite element of physical harm to a law enforcement officer has been met.

{¶ 53} In conjunction with my above-described evidentiary conclusion contrary to the separate opinions issued by this court on this matter, I am also particularly concerned about the broader ramifications of our initiation, formulation of, and reliance upon an issue not preserved, formulated, or presented by the parties to this appeal as the basis of reversal of the trial court judgment in this criminal case.

{¶ 54} In contrast to the analysis pursued by the majority, appellant principally asserted both in his brief submitted on appeal, and at oral arguments on appeal, that the resisting arrest charge failed the sufficiency test because appellant, "was not informed [that] he was under arrest at the time Shaner began yanking and pulling on Brown."

{¶ 55} Stemming from this primary assertion, appellant next argues that the state must show that, "appellant knew he was under arrest before resisting." Accordingly,

23.

appellant claims that a resisting arrest conviction should be reversed where a defendant, "does not understand that he is being arrested, citing *In re S.C.W.*, 9th Dist. Summit No. 25421, 2011-Ohio-3193."

{¶ 56} However, no argument was ever presented to either the trial court or to this court by a party to this case that the element of physical harm to a law enforcement officer had not been met. Consistent with this genesis of the matter, there was no objection made at the trial level to enable corrective measures to have been taken, such as via a Crim.R. 29 motion.

{¶ 57} Appellant has forfeited an argument that the officer was not injured. Nevertheless, this issue now emerges from this court itself and serves as the substantive basis of the reversal by this court.

{¶ 58} An appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called, but did not call, to the trial court's attention at a time when such error could have been avoided or corrected by the trial court. *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 15, quoting *State v. Childs*, 14 Ohio St.2d 56, 236 N.E.2d 545 (1968), paragraph three of the syllabus.

{¶ 59} Moreover, it is not the duty of this court to develop an argument in support of an assignment of error, even if one exists. *State v. Tanner*, 9th Dist. Medina No. 04CA0062-M, 2005-Ohio-998, ¶ 24.

24.

{¶ 60} Although it is within this court's discretion to consider a forfeited constitutional challenge and review the trial court's decision for plain error, plain error should be strictly limited, "to the extremely rare case involving exceptional circumstances when the error, left unobjected to at the trial court, rises to the level of challenging the legitimacy of the underlying judicial process itself." *State v.* Morgan, 153 Ohio St.3d 196, 2017-Ohio-565, 103 N.E.3d 784, ¶ 40, citing *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 679 N.E.2d 1099 (1997).

{¶ 61} The burden of demonstrating plain error rests with appellant. *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, 873 N.E.2d 306, ¶ 17. Appellant has not shown that this is an error that challenges the legitimacy of the underlying judicial process, so as to arguably warrant an application of the plain-error doctrine.

{¶ 62} In this instance, we would also do a disservice to the litigants and the trial court in utilizing this issue as the linchpin in the resolution this appeal. Appellant did not raise the issue of physical harm to a law enforcement officer at any time in the course of this litigation. It is not the proper role or scope of this intermediary court to act in the place of the counsel of either party to this appeal.

{¶ 63} We "should be hesitant to decide such matters for the reason that justice is far better served when it has the benefit of briefing, arguing, and lower court consideration before making a final determination." *Sizemore v. Smith*, 6 Ohio St.3d 330, 332, 453 N.E.2d 632 (1983), fn. 2. To echo the *Quarterman* court, "[w]e are not obligated to search the record or formulate legal arguments on behalf of the parties,

25.

because "'appellate courts do not sit as self-directed boards of legal inquiry and research, but [preside] essentially as arbiters of legal questions presented and argued by the parties before them.'" *Quarterman* at ¶ 19, quoting *State v. Bodyke*, 126 Ohio St.3d 266, 2010-Ohio-2424, 933 N.E.2d 753, ¶ 78 (O'Donnell, J., concurring in part and dissenting in part), quoting *Carducci v. Regan*, 714 F.2d 171, 177 (D.C.Cir.1983). *Risner v. Ohio Dept. of Nat. Res., Ohio Div. of Wildlife*, 144 Ohio St.3d 278, 2015-Ohio-3731, 42 N.E.3d 718, ¶ 26-28.

{¶ 64} If we restrict the definition of physical harm as an injury, exclusively, then we ignore the defining language that the legislature specifically inserted into this statute that included physical impairment, *regardless of its gravity or duration*. (Emphasis added). This unique legislative language should not be judicially impacted and altered.

{¶ 65} I have serious misgivings that if we engineer and raise this novel, outcome determinative issue ourselves without giving appellant or appellee an opportunity to respond, we may be inviting further trips by this court into the thicket of unpresented arguments, wandering the forest floor in search of unresponsive assignments. In the instant case, we had to sua sponte vigorously shake and remake appellant's second assignment of error before this argument fell out unceremoniously to the underbrush of abandoned and waived arguments.

{¶ 66} We must remain mindful that we are obligated to review the evidence in a light most favorable to the prosecution in order to properly determine whether the

26.

evidence presented to the trial court was sufficient to sustain a conviction. *State v. Jenks*, 61 Ohio St.3d 259, 279, 574 N.E.2d 492 (1991).

{¶ 67} The troublesome journey into sua sponte consideration of substantive appellate arguments placed into the stream of consideration by this court, and not properly rooted in arguments submitted to us by the parties to this case, is precisely the kind of hazardous trajectory that the Ohio Supreme Court cautioned against in *Sizemore*, *Quarterman*, and *Risner*.

{¶ 68} While I find this entire exercise to be imprudent for the above-stated reasons, even assuming arguendo that it is proper for this court to unilaterally set forth and consider this specific issue on appeal, I nevertheless find that the majority conclusion regarding the element of the physical harm to a law enforcement officer in this case is without merit after viewing the video that was presented to the jury.

{¶ 69} The legislature has defined physical harm in R.C. 2901.01(A) (3) as, "any injury, illness, or other physiological impairment, regardless of its gravity or duration."

{¶ 70} While I concur that the evidence does not demonstrate a tangible physical injury, and the officer was not inflicted with an illness as a result of his encounter with appellant, I nevertheless find in reviewing the video evidence of the subject encounter that there is ample evidence of a physiological impairment when appellant kicked the officer, thereby visibly shifting the position of the officer's person.

{¶ 71} The video evidence contained in the record clearly reflects that the kick at issue was sufficient to cause the officer's body to turn sideways regardless of whether the officer said sarcastically subsequently that, "it didn't feel good."

{¶ 72} In conjunction with the above, the victim's subjective representation of the physical harm experienced is simply not relevant. This court has previously held that the element of physical harm (physiological impairment) is met, *regardless of how the victim viewed the incident*. (Emphasis added). *In the Matter of Goretzki*, 6th Dist. Erie E-93-48, 1994 WL 39053 (Feb. 11, 1994). In that case, the victim testified that he was never scared and that it did not hurt him when his half-brother burned his hair with a blow torch. This opinion today effectively erases *Goretzki* and opens up a panoramic vista of possibilities. Is this opinion confined to police officers? Are they now held to a higher standard of "articulated" physiological impairment rather than video evidence presented to a jury?

{¶ 73} Likewise, in some instances, a victim may not testify. Or a victim may testify that she did not feel anything when her assailant kicked her in the head. I would look to the plain language of the statute: "any injury or other physiological impairment, *regardless of its gravity or duration*." (Emphasis added.) R.C. 2901.01(C).

{¶ 74} In *State v. Conliff*, 61 Ohio App.2d 185, 196, 401 N.E.2d 469 (10th Dist.1978), Judge Whiteside, in his concurring opinion, noted that, "being struck on the head and shoulder by a pie is sufficient to constitute the physical harm element of R.C.

28.

2903.13(A)." *See also Columbus v. Bonner,* 10th Dist. Franklin No. 81AP-161, 1981 WL 3356 (July 21, 1981) ("slightest physical harm is sufficient"), cited in *City of Columbus v. Lipsey*, 10th Dist. Franklin Nos 90AP-543, 90AP-544, 1991 WL 34918 (Mar. 12, 1991). *See also Dayton v. Hadley*, 2d Dist. Montgomery No. 9509, 1986 WL 6330 (June 2, 1986), and *State v. Robinson*, 5th Dist. Stark No. CA-6649, 1985 WL 6513 (Sept. 30, 1985) ("act of throwing urine upon a person was sufficient to constitute 'physical harm' under R.C. 2903.13"). *State v. Hustead*, 83 Ohio App.3d 809, 811-12, 615 N.E.2d 1081 (4th Dist.1992).

{¶ 75} I find the case cited in the concurrence in which a police officer was struck with a blow sufficient to cause the officer to stumble backwards to be persuasive. *See City of Columbus v. Lipsey*, 10th Dist. Franklin Nos. 90AP-543, 90AP-544, 1991 WL 34918 (Mar. 12, 1991). That scenario was found sufficient to constitute the element of physical harm, as reflected by the officer's resulting stumble. Similarly, in the video in this case, the officer is struck with sufficient force to cause his body to shift, and turn sideways.

{¶ 76} Accordingly, I find that the element of physical harm to a law enforcement officer is met, separate and apart from the issue of far greater concern and impact of the propriety of this court's self-directed consideration of whether the element of physical harm to a law enforcement officer has been met. This issue, upon which this court is relying to resolve this matter, was not preserved, formulated, and presented by any party

29.

to this appeal, and as such, it is not properly part of this appeal.   In sum, I dissent on this second assignment and would affirm the judgment of both the jury and the trial court, hoping not to inflict any further physiological impairment on anyone.

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.