[Cite as *In re S.W.C.*, 2011-Ohio-3193.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

IN RE: S. C. W.

C.A. No.    25421

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    DL 09-09-003105

DECISION AND JOURNAL ENTRY

Dated: June 29, 2011

Per Curiam.

{¶1}    Appellant, S.C.-W., appeals from the judgment of the Summit County Court of Common Pleas, Juvenile Division.  This Court affirms in part and reverses in part.

I.

{¶2}    S.C.-W., then aged 12, was arrested on September 16, 2009, based on an incident that occurred at the Firestone Park Library in Akron, Ohio.  According to the testimony introduced at trial, a police officer working security at the library told him to leave the property.  The officer granted, one person, S.C.-W.'s older sister, permission to reenter the library to retrieve her cell phone.  When S.C.-W. attempted to reenter the library with his sister, he struggled with and was quickly subdued by the officer.  As a result of the incident, a complaint was filed in the Summit County Court of Common Pleas, Juvenile Division, alleging that S.C.-W. was a delinquent child by reason of one count of assault in violation of R.C. 2903.13, a felony of the fourth degree if committed by an adult, one count of resisting arrest in violation of

2921.33, a misdemeanor of the first degree if committed by an adult, and one count of criminal trespass in violation of 2911.21, a misdemeanor of the fourth degree if committed by an adult. After a bench trial on March 15, 2010, he was adjudicated delinquent by reason of assault, resisting arrest, and criminal trespass. On April 27, 2010, S.C.-W. was sentenced to four months of traditional probation and was required to submit a DNA sample.

{¶3}   He timely filed a notice of appeal and raises two assignments of error.  Because it is dispositive of some of the claims, we begin with the second assignment of error.

II.

## ASSIGNMENT OF ERROR II

"THE TRIAL COURT ERRED IN FAILING TO GRANT [S.C.-W.'S] CRIMINAL RULE 29 MOTION TO DISMISS THE ASSAULT, RESISTING ARREST, AND CRIMINAL TRESPASS CHARGES FOLLOWING THE STATE'S CASE."

{¶4}   In his second assignment of error, S.C.-W. contends that his adjudications of delinquency by way of assault, resisting arrest, and criminal trespass were based on insufficient evidence.  We agree in part.

{¶5}   It is well established that proceedings in juvenile court are civil in nature.  *In re Agler* (1969), 19 Ohio St.2d 70, 74.  However, due to the inherent criminal aspects of delinquency proceedings, the State must prove juvenile delinquency beyond a reasonable doubt.

> "Whatever their label, juvenile delinquency laws feature inherently criminal aspects that we cannot ignore.  See [*In re Anderson* (2001), 92 Ohio St.3d 63, 65-66.]  For this reason, numerous constitutional safeguards normally reserved for criminal prosecutions are equally applicable to juvenile delinquency proceedings.  Id. at 66, citing *In re Gault*, (1967), 387 U.S. 1, 31-57 [ ] (holding that various Fifth and Sixth Amendment protections apply to juvenile proceedings), and *In re Winship* (1970), 397 U.S. 358, 365-68 (holding that the state must prove juvenile delinquency beyond a reasonable doubt)[.]" *State v. Walls*, 96 Ohio St.3d 437, 2002-Ohio-5059, at ¶26.

**{¶6}** When considering a challenge to the sufficiency of the evidence, the court must determine whether the prosecution has met its burden of production. To determine whether the evidence in a criminal case was sufficient to sustain an adjudication of delinquency, an appellate court must view that evidence in a light most favorable to the prosecution:

> "An appellate court's function when reviewing the sufficiency of the evidence to support [an adjudication of delinquency] is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.

Trespass

**{¶7}** S.C.-W. was adjudicated delinquent by way of criminal trespass in violation of R.C. 2911.21, which states, in relevant part, that "[n]o person, without privilege to do so, shall * * * [k]nowingly enter or remain on the land or premises of another[.]" R.C. 2911.21(A)(1). S.C.-W. maintains that the State failed to show that he had intent to reenter the library.

**{¶8}** Akron Police Officer Richard Culp testified that he works a second job for the Akron-Summit County Public Libraries. On September 16, 2009, Officer Culp was in uniform working at the Firestone Park Library. On that particular evening, the library was rather full and all of the computers were in use. Library patrons were making reservations in order to use the computers.

**{¶9}** At approximately 6:00 pm, the officer observed four individuals enter the library, walk over to the computer area, and stand around someone who was using one of the computers. Officer Culp advised the individuals, including S.C.-W., that they needed to "find a seat and find something to do." He testified that it is library policy to have only one person at each computer

so that individuals using the computers are not distracted by persons who are standing nearby. Officer Culp testified that the four individuals complied and moved away from the computers.

{¶10} A short time later, the officer observed the same four individuals standing behind another computer. He again advised them that they needed to "find a seat, find something to do." Officer Culp testified that he later found the four of them at a third computer located near the front desk. The officer told them, "We're done discussing this. It's time for you to leave." As they walked toward the door, S.C.-W. mouthed-off to the officer.

{¶11} After the individuals exited the library, Officer Culp stood at the door and watched. When they did not leave immediately, he told the group that they needed to leave the property. Specifically, he told them that they must walk "[e]ither across the street, up the block, down the block; you just can't be here when you are asked to leave." At that time, one of the individuals, S.C.-W.'s older sister, said that she had left her cell phone inside the library. The officer allowed her to reenter the library to retrieve it and said, "The rest of you need to leave the property now."

{¶12} According to the officer, S.C.-W. said, "I'm going in too." The officer told him that he was not permitted to enter and that he needed to leave the property. S.C.-W. responded by saying, "No. I'm going in." The officer said, "No, you're not going in." The officer put his arm out and S.C.-W. tried to push past him to enter the library. The officer grabbed S.C.-W.'s arm as he pushed past and said, "You're not going in." The officer testified that S.C.-W. was now trespassing because "he had been officially warned and asked to leave the property, so at that point he's under arrest for trespassing * * *."

{¶13} Construing this evidence in a light most favorable to the prosecution, the trier of fact could reasonably conclude that S.C.-W. had knowingly entered or remained on the land or

premises of another after he was told multiple times by Officer Culp to leave the premises. Accordingly, this portion of S.C.-W.'s assignment of error is overruled.

Assault

{¶14} S.C.-W. was also adjudicated delinquent by way of assault on a peace officer pursuant to R.C. 2903.13, which provides that "[n]o person shall knowingly cause or attempt to cause physical harm to another[.]" R.C. 2903.13(A). In addition, R.C. 2903.13(C)(3) states that if the victim of the assault is a peace officer who is assaulted during the performance of his official duties, the offense is a felony of the fourth degree if committed by an adult. S.C.-W. argues that the State failed to produce sufficient evidence of intent to cause physical harm; we will focus our discussion on that element.

{¶15} Officer Culp testified that as S.C.-W. attempted to reenter the library, the officer grabbed S.C.-W.'s arm as he pushed past and again told him that he was not to reenter the library. At that point, a struggle ensued where S.C.-W. attempted to escape the grasp of the officer. Within seconds, the officer was able to turn S.C.-W. around so that his back was to the officer's chest and his arms were restrained. He then "lifted [S.C.-W.] up and took him to the back room."

{¶16} A library employee, Steve Thomas, testified regarding the struggle. He testified that S.C.-W. was "trying to break away from the police officer and the police officer [was] trying to pull him back into the building." Another employee, Cassandra Walker, testified that she heard a loud noise and witnessed the officer "engaged with one of the children that he had previously asked to leave[.]" She said that it looked like the officer was trying to calm down or stop the child, who was "flailing about."

**{¶17}** In addition, the trier of facts had the opportunity to review video surveillance footage of the incident. While the video footage does not display what occurred outside of the doors of the library, it does provide evidence of the events that occurred at the entrance of the library when S.C.-W. allegedly assaulted the officer. Officer Culp is seen entering the library with his hands on S.C.-W., while S.C.-W. appears to be backing into the library. The video shows Officer Culp grab S.C.-W. and push him against the wall. S.C.-W. is seen briefly flailing about in an attempt to evade the officer.

**{¶18}** The question is whether the State proved that S.C.-W. had the required mental culpability. The State was required to prove that S.C.-W. knowingly caused or attempted to cause physical harm. R.C. 2903.13(A). A person acts "knowingly" when he is "aware that his conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). Whether a person acts knowingly can only be determined, absent an admission, from the surrounding facts and circumstances, including the doing of the act itself. *State v. Huff* (2001), 145 Ohio App.3d 555, 563 (footnote omitted). "Thus, '[t]he test for whether a defendant acted knowingly is a subjective one, but it is decided on objective criteria.'" *State v. Frazier*, 5th Dist.No. 2010CA00172, 2011-Ohio-1206, ¶22 (citations omitted).

**{¶19}** One important consideration in this case is the young age of the child. The United States Supreme Court recently decided that a child's age could be considered when determining whether the child was in custody for *Miranda* purposes. During its analysis of that issue, the Court discussed the importance of age – "A child's age is far 'more than a chronological fact.' It is a fact that 'generates commonsense conclusions about behavior and perception.' Such conclusions apply broadly to children as a class. And, they are self-evident to anyone who was a child once himself, including any police officer or judge." *J.D.B. v. North Carolina* (June 16,

2011), 564 U.S. ___, Slip Opinion at 8-9. Later in its discussion, the Court recognized that, "[i]n short, officers and judges need no imaginative powers, knowledge of developmental psychology, training in cognitive science, or expertise in social and cultural anthropology to account for a child's age. They simply need the common sense to know that a 7-year-old is not a 13-year-old and neither is an adult." Id. at 17. The child in this case was 12-years-old at the time he visited the library. Just as the Supreme Court recognized in *J.D.B.*, age is a factor that is important to our decision in this case.

{¶20} Based on our review of the record, we conclude that the State failed to present sufficient evidence to demonstrate beyond a reasonable doubt that S.C.-W. *knowingly* caused or attempted to cause physical harm to Officer Culp. One unique aspect of this case is that the State presented a video of the incident that is alleged to be the basis of the offense.

{¶21} The video of the struggle shows a child flailing about for a moment, but quickly subdued by a larger and stronger police officer. Officer Culp pulled S.C.-W. into the building and maintained a firm grip on him. As the officer held him, the child said that he would "kick his ass." Based on the testimony, however, this was a hollow threat as the officer had a firm grip on the child, and the officer threatened to use a taser on him, during a struggle that lasted only a few seconds. After securing him, the officer picked up the child and carried him to the back of the library.

{¶22} After considering this evidence, we cannot conclude that the State proved beyond a reasonable doubt that the child was aware that his conduct would probably cause a certain result. The evidence proved that S.C.-W. struggled with the officer and, during that struggle, he flailed about. Throughout the video, however, the officer's hands are on or around S.C.-W. to secure him. Even though S.C.-W. flailed about and struggled against the officer's grasp, there

was no point where he was free so that he could *knowingly* strike the officer to cause or attempt to cause physical harm.

{¶23} This case is similar to *In re Freeborn* (Dec. 15, 1999), 5th Dist. No. 98CA08. In that case, a teacher broke up a fight between two students. The teacher grabbed the students by their shirts and separated them. One student continued to struggle and the teacher tried to subdue him, holding his arms and pushing him against the gym's bleachers. During this struggle, the student's arms and legs flailed about. Eventually, the student's behavior escalated into a punch, "and what was once accidental contact became intentional[.]" Id. at *1. The *Freeborn* court affirmed the finding of delinquency by assault. It did so, however, because the student drew back his fist and struck the teacher – he knowingly caused physical harm. The *Freeborn* court distinguished the student's "flailing" when the teacher tried to restrain him, referring to this contact with the teacher as incidental and accidental. We have before us in this case the same type of incidental and accidental contact between the child and Officer Culp when the officer restrained him. Incidental and accidental conduct cannot support a conviction for knowingly causing or attempting to cause physical harm.

{¶24} In a similar situation, the Sixth District considered a student's push of a teacher in an effort to get past the teacher to continue a fight with another student. The court held that the push did not constitute an assault because the state presented insufficient evidence that the student was aware that his push might cause physical harm. *In re Mark M.* (Feb. 4, 2000), 6th Dist. Nos. E-99-028, E-99-046, *3. Likewise, in this case, there was no evidence that the child's incidental contact with the officer during a few seconds of flailing, done as the child attempted to enter the library to follow his older sister, might cause or attempt to cause physical harm.

**{¶25}** The State did not prove beyond a reasonable doubt, either through testimony or the video, that S.C.-W. *knowingly* – with an awareness that his conduct would probably cause a certain result – struck the officer either to cause or attempt to cause physical harm. Without question, S.C.-W. was upset and responded inappropriately, but there was insufficient evidence to find S.C.-W. criminally liable for knowingly assaulting a peace officer. *In re Mark M.* (2000), 6th Dist. Nos. E-99-028, E-99-046, at *3.

**{¶26}** Because S.C.-W.'s adjudication of delinquency by way of assault is not supported by sufficient evidence, we reverse. This portion of S.C.-W.'s second assignment of error is sustained.

Resisting Arrest

**{¶27}** S.C.-W. was adjudicated delinquent by way of the first degree misdemeanor of resisting arrest. Under R.C. 2921.33, it is a first degree misdemeanor to violate the following provision:

> "No person, recklessly or by force, shall resist or interfere with a lawful arrest of the person or another person and, during the course of or as a result of the resistance or interference, cause physical harm to a law enforcement officer." *State v. Smith*, 9th Dist. No. 23554, 2007-Ohio-5673, at ¶20.

**{¶28}** The State was therefore required to introduce evidence demonstrating that S.C.-W., "while he struggled with [the police officer] as he did, understood that he was under arrest, or at least in the process of being arrested. An arrest signifies a restraint on a person's freedom of movement in contemplation of filing a criminal charge. *State v. Darrah* [(1980), 64 Ohio St.2d 22, 26]. The evidence must show that the subject of an arrest should reasonably have understood that such a seizure occurred." (Citation omitted.) *State v. Thomas*, 2nd Dist. No. 19839, 2004-Ohio-673, at ¶24. The Supreme Court held, in *Darrah*, that

"An arrest occurs when the following four requisite elements are involved: (1) An intent to arrest, (2) under a real or pretended authority, (3) accompanied by an actual or constructive seizure or detention of the person, and (4) which is so understood by the person arrested." *Darrah*, 64 Ohio St.2d at 26.

{¶29} In this case, Officer Culp testified that he grabbed S.C.-W. and took him into the library. Although Officer Culp was wearing his uniform, there is no other evidence in the record that would suggest S.C.-W. had reason to believe an arrest was taking place.

{¶30} There is no evidence in the record that Officer Culp advised S.C.-W. that he was under arrest as Officer Culp struggled to with S.C.-W. in an effort to prevent him from entering the library. Nor is there any evidence that Officer Culp took some other action from which S.C.-W. could reasonably understand that an arrest was taking place. We have said, and other districts have concurred, that a statement articulating arrest is not necessary, but rather an arrest may be inferred from the circumstances. See *City of Akron v. Kulasa* (Apr. 5, 2000), 9th Dist. No. 19815, at *3; *State v. Maurer* (1984), 15 Ohio St.3d 239; *State v. Mink* (Oct. 13, 1983), 2nd Dist. No. 8315. In this instance, however, given the nature of the scuffle surrounding S.C.-W.'s purported attempt to reenter the library, we cannot say that this element was established beyond a reasonable doubt. Officer Culp told S.C.-W. that he could not re-enter the library with his sister. S.C.-W. disregarded the officer's directive. Although he then engaged in a struggle with S.C.-W., the evidence clearly shows that this struggle was predicated on their dispute over whether S.C.-W. could follow his sister into the library. While S.C.-W.'s disregard of the officer's command not to reenter the library may have supported a different charge, the evidence is insufficient to demonstrate that S.C.-W., then twelve years old, understood that he was being placed under arrest.

**{¶31}** Because S.C.-W.'s adjudication of delinquency by way of resisting arrest is not supported by sufficient evidence, we reverse. This portion of S.C.-W.'s second assignment of error is sustained.

### ASSIGNMENT OF ERROR I

"[S.C.-W.'S] CONVICTION OF ASSAULT, RESISTING ARREST, AND CRIMINAL TRESPASS WERE CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE."

**{¶32}** In his first assignment of error, S.C.-W. contends that his adjudications of delinquency by way of assault, resisting arrest, and criminal trespass were against the manifest weight of the evidence.

**{¶33}** When a defendant asserts that his adjudication of delinquency is against the manifest weight of the evidence,

> "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the [adjudication of delinquency] must be reversed and a new trial ordered." *State v. Otten* (1986), 33 Ohio App.3d 339, 340.

This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.

Assault & Resisting Arrest

**{¶34}** Having already disposed of the adjudication of delinquency by way of resisting arrest and assault in the second assignment of error, this portion of S.C.-W.'s manifest weight argument is now moot. App.R. 12(A)(1)(c).

Trespass

**{¶35}** Thomas testified that he witnessed Officer Culp escorting a group of young children and teenagers out of the library. He testified that as they reached the door, S.C.-W.

"started pushing and shoving and * * * trying to break away from the police officer and the police officer trying to pull him back into the building."

{¶36} S.C.-W. testified in his own behalf and admitted that the officer had asked the group to leave the library. He told the officer, "It's okay; I'll just be back tomorrow." Once outside, the officer said "I thought I told you guys to leave." When S.C.-W.'s sister told the officer that she forgot her phone, the officer said "Okay. Go and get it." After his sister and her friend walked in, S.C.-W. "was seeing if [he] could go, and then [the officer] pushed [him] back[.]" S.C.-W. further testified that he had not yet reached the door when the officer stopped him, and that it was hurting his back so he put his hands up to stop the officer. At this point, S.C.-W. tried to step back and the officer grabbed him and pulled him inside of the library.

{¶37} J.P., a friend of S.C.-W., testified that he was already at the library on September 16, 2009, when S.C.-W. entered the library. J.P. was sitting at a computer when Officer Culp asked the group the leave. J.P. had also walked outside and saw Officer Culp come out of the library, grab S.C.-W., and pull him into the library.

{¶38} It is apparent from the testimony that S.C.-W. was asked to leave the premises and that he remained on the property without permission. The officer testified that he went outside of the doors and told the four youth that they needed to leave the property. He specifically told them to go across the street or down the block, but that they could not remain on library premises. When S.C.-W. attempted to follow his sister into the library, he was entering or remaining on premises of another after having been told by someone in authority to leave. "If the complainant asked the guest to leave, had the authority to ask the guest to leave, and the guest did not immediately leave the premises, then the guest was trespassing." *State v. Helman*,

7th Dist. No. 03 CO 55, 2004-Ohio-4867, at ¶10, citing *State v. Todd* (Sept. 17, 2001), 12th Dist. No. CA2001-04-0929.

**{¶39}** The parties seem to focus on whether S.C.-W. reentered the library voluntarily, or if he was pulled into the library by the officer. However, the statute provides no person shall "[k]nowingly enter or *remain* on the land or premises of another." (Emphasis added.) R.C. 2911.21(A). A case in the Tenth District, *City of Columbus v. Hagwood* (1984), 16 Ohio App.3d 235, involved a city code section with identical language and held "thus a defendant is guilty of criminal trespass merely by walking on the property and does not have to enter a locked dwelling in order for the trespass to occur." Id. at the syllabus.

**{¶40}** It is important to note that we do not take a position on the propriety of ordering a twelve-year-old off of the premises without his older sister, but nonetheless the elements of trespass were met under these facts, and S.C.-W. has not argued that he could not leave the premises without his sister. Accordingly, upon review of the record, we cannot conclude that "in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Otten*, 33 Ohio App. 3d at 340. This portion of S.C.-W.'s first assignment of error is overruled.

### III.

**{¶41}** S.C.-W.'s second assignment of error is sustained in part, and affirmed in part. The first assignment of error is moot as to assault and resisting arrest and is overruled as to the adjudication for criminal trespass. We reverse the adjudications of delinquency by way of assault and resisting arrest and affirm the adjudication for criminal trespass.

Judgment affirmed in part,
and reversed in part.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to both parties equally.

EVE V. BELFANCE
FOR THE COURT

BELFANCE, P. J.
CARR, J.
CONCUR

MOORE, J.
CONCURS IN PART, AND DISSENTS IN PART, SAYING:

{¶42} The majority concludes that there was insufficient evidence to support the adjudication of delinquency by way of assault. I must respectfully dissent.

{¶43} When this Court reviews sufficiency of the evidence, we must consider the evidence in a light most favorable to the State. *State v. Jenks* (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. The officer involved in this case was working an extra duty job at the public library. He was dressed in an Akron Police Department uniform when he instructed

S.C.-W. to leave the premises. The trial court had before it evidence that the youngster defied the officer verbally by saying "I'll be back". Then S.C.-W. made good on his statement by pushing the officer's arm to gain entry into the building. The charge of delinquency by way of assault on a peace officer pursuant to R.C. 2903.13, provides that "[n]o person shall knowingly cause or attempt to cause physical harm to another[.]" R.C. 2903.13(A). If the victim of the assault is a peace officer who is assaulted during the performance of his official duties, the offense is a felony of the fourth degree if committed by an adult.

{¶44} The trial court had before it the videotape of the scuffle. Portions of the tape are difficult to view from the vantage point of the security cameras, but the juvenile is seen becoming combative with the officer prior to being restrained. The officer's testimony was consistent with the videotape. He testified that S.C-W. hit him in the chest with closed fists and kicked him, such that the officer was forced to turn the youngster around and wrap up his arms to avoid further assault. In addition, trial court also had before it testimony that the youngster said to the officer, "I'm going to kick your ass." There is no question that that statement, if believed by the trier of fact, demonstrates an affirmative intention to cause physical harm to the officer. "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). It is difficult for me to comprehend how under these circumstances, S.C.-W. would not have been aware (at age 12 or age 50) that his conduct of hitting an officer and kicking an officer would not probably cause physical harm. The majority cites a recent U.S. Supreme Court case involving *Miranda* warnings to suggest that age should be a factor in evaluating the *mens rea* of a juvenile for purposes of proving delinquency. See *J.B.D. v. North Carolina* (June 16, 2011), 564 U.S. ___, Slip Opinion at 8-9. The issue of *mens rea* was not before the high court, therefore the case

is inapposite. Further, the trial court that made the determination of delinquency with respect to S.C.-W. specializes in hearing only juvenile cases and is in a unique position to make determinations regarding the maturity of the juveniles appearing in that court. Finally, "we are aware of no authority, and [S.C.-W] cites none, for the proposition that a different mental culpability state must be employed in determining whether a juvenile has committed an act that, if committed by an adult, would constitute a crime. Nor [am I] persuaded that this would be a wise legal principle." *In Matter of Archie* (Dec. 6, 1995), 2d Dist. No. 95-CA-33, at *6. In my view, considering the evidence in a light most favorable to the State, there is ample evidence to support the trial court's finding of delinquency by reason of assault on a police officer in performance of his official duties.

{¶45} Whether the officer might have de-escalated the situation and avoided the confrontation is not the issue before us today. The appellant invites us to examine the record before the trial court and determine whether or not, viewing the evidence most strongly in favor of the State, there is sufficient evidence to support the finding of delinquency. It is clear to me that there is sufficient evidence.

{¶46} The remaining cases sited by the majority are distinguishable on their facts. In both *In re Mark M.* (Feb. 4, 2000), 6th Dist. Nos. E-99-028, E-99-046, and *In re Freeborn* (Dec. 15, 1999), 5th Dist. No. 98CA08, a teacher was attempting to break up a scuffle between students where the animosity was directed at the other student and the teacher was injured as he or she intervened. Here, no third person was involved. S.C.-W.'s anger was directed only toward the police officer. Furthermore, the *Freeborn* court acknowledged that while any incidental and accidental strikes the teacher received would not amount to assault, once the student "told [the teacher] he was going to hit him and then followed through on that threat"

there was sufficient evidence. Id. at *4. That is precisely what happened in this case. There is evidence in the record that S.C.-W. threatened physical harm to the officer and then made good on this threat.

{¶47} I would also find that S.C.-W.'s adjudication of delinquency by way of assault was not against the manifest weight of the evidence. When a defendant asserts that his adjudication of delinquency is against the manifest weight of the evidence,

> "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the [adjudication of delinquency] must be reversed and a new trial ordered." *State v. Otten* (1986), 33 Ohio App.3d 339, 340.

This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.

{¶48} Officer Culp testified that as S.C.-W. attempted to reenter the library, the officer grabbed S.C.-W.'s arm as he pushed past and again told him that he was not to reenter the library. At that point, S.C.-W. "started to pull, swing and -- swing his arms, kick his feet." The officer repeatedly told S.C.-W. to stop fighting, and S.C.-W. continued to fight and use racial slurs. At one point the officer said, "Stop fighting or I will tase you." S.C.-W. threatened the officer by stating "I'm going to kick your ass." According to the officer's testimony, "[S.C.-W.'s] left arm swung numerous times, his right arm grabbed and hit [the officer's] chest[.]" S.C.-W. also struck the officer in the chest with closed fists. Officer Culp was unsure of how many times S.C.-W. hit or kicked him.

{¶49} The officer was able to turn S.C.-W. around so that his back was to the officer's chest and he restrained his arms so that he could no longer strike the officer. He "basically lifted

[S.C.-W.] up and took him to the back room." The officer testified that during the struggle the officer's shirt was torn and his finger was broken.

**{¶50}** Steve Thomas similarly testified regarding the events in question. Thomas is employed as a public service assistant at the Firestone Park Library. He assists library patrons with the check-in and check-out process. On September 16, 2009, he witnessed Officer Culp escorting a group of young children and teenagers out of the library. He testified that as they reached the door, S.C.-W. "started pushing and shoving and * * * trying to break away from the police officer and the police officer trying to pull him back into the building." He stated that he witnessed grabbing and kicking as well.

**{¶51}** Cassandra Walker, also a public service assistant at the Firestone Park Library, testified that on September 16, 2009, she was working the front circulation desk. She was assisting a patron and heard a loud noise and witnessed the officer "engaged with one of the children that he had previously asked to leave[.]" She said that it looked like the officer was trying to calm down or stop the child. The child was cursing, swearing and "flailing about." She testified that S.C.-W. was putting up a fight and the officer was trying to contain him.

**{¶52}** S.C.-W. testified in his own behalf and contends that the officer grabbed him and threw him inside of the library and pushed him against the wall. He said that his back had been injured playing football two days earlier. S.C.-W. testified that he was trying to push the officer away because his back was in pain. He admitted that he was grabbing, kicking and pushing, but denied that he was swinging at the officer. S.C.-W. also denied that he threatened to beat up the officer.

**{¶53}** The evidence essentially created a question of credibility between Officer Culp's and S.C.-W.'s testimony. "The weight to be given the evidence and the credibility of the

witness[es] are primarily for the trier of the facts"; in this case, the judge. *State v. Jackson* (1993), 86 Ohio App.3d 29, 32, citing *State v. Richey* (1992), 64 Ohio St.3d 353, 363. The trier of facts is in the best position to "view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co., Inc. v. City of Cleveland* (1984), 10 Ohio St.3d 77, 80. "'The [trier of fact] did not lose its way simply because it chose to believe the State's version of the events, which it had a right to do.'" *State v. Feliciano*, 9th Dist. No. 09CA009595, 2010-Ohio-2809, at ¶50, quoting, *State v. Morten*, 2d Dist. No. 23103, 2010-Ohio-117, at ¶28.

{¶54} Accordingly, upon review of the record, I would not conclude that "in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the [adjudication of delinquency] must be reversed and a new trial ordered." *Otten*, 33 Ohio App.3d at 340. Accordingly, I would overrule this portion of S.C.-W.'s assignment of error.

{¶55} Finally, I disagree with the holding of the majority that the record provides insufficient evidence to support a finding of delinquency by reason of resisting arrest by S.C.-W. To be sure, under Ohio Supreme Court precedent, a statement by the officer articulating arrest is not necessary to support the finding, so long as the surrounding circumstances provide a basis upon which arrest may be inferred. In this case, there was evidence in the record that the officer had instructed S.C.-W. numerous times that he was to leave the premises. Further, he stood in the doorway of the library to physically block the youngster from re-entering. When S.C.-W. pushed his way past the officer and the scuffle ensued, there is no other reasonable inference that can be drawn from the officer's carrying him back into the library other than arrest. Accordingly, I would overrule this portion of S.C.-W.'s assignment of error.

{¶56} I would also find that S.C.-W.'s adjudication of delinquency by way of resisting arrest was not against the manifest weight of the evidence. S.C.-W.'s testimony contends that the officer grabbed him and threw him inside of the library and pushed him against the wall. S.C.-W. admitted that he was grabbing, kicking and pushing the officer, but contends that he did so only because he was in pain.

{¶57} As in *State v. Thomas* (Feb. 1, 1995), 9th Dist. No. 2910, S.C.-W. "disobeyed commands of a police officer to submit to police authority * * * This court, as well as other Ohio appellate courts, have previously recognized that conduct which delays an arrest procedure, or requires the use of additional force in an arrest procedure, may constitute resisting arrest." Id. at *2, citing *State v. Wagner* (Aug. 11, 1993), 9th Dist. No. 2205; *Akron v. Detwiler* (July 5, 1990), 9th Dist. No. 14385; *State v. Williams* (1992), 84 Ohio App.3d 129; *Athens v. Bromall* (1969), 20 Ohio App.2d 140 (Stephenson, J., concurring).

{¶58} In this case, the State's evidence demonstrates that S.C.-W. repeatedly ignored the officer's order to "stop fighting" even after the threat of tasing. Accordingly, I would conclude that S.C.-W.'s adjudication of delinquency by way of resisting arrest was not against the manifest weight of the evidence. I would overrule this portion of S.C.-W.'s first assignment of error.

{¶59} I concur that there was sufficient evidence to support the charge of delinquency by reason of trespass, and that the finding was not against the manifest weight of the evidence.


APPEARANCES:

LEONARD J. BREIDING, II, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN R. DIMARTINO, Assistant Prosecuting Attorney, for Appellee.