[Cite as *State v. Lewis*, 2022-Ohio-4421.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                            Court of Appeals No.  L-21-1248

     Appellee                                          Trial Court No.  CR0202102190

v.

Jon Robert Lewis                                  **DECISION AND JUDGMENT**

     Appellant                                         Decided:  December 9, 2022

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Brenda J. Majdalani, and Angela M. Zavac, Assistant Prosecuting
Attorneys, for appellee.

Lawrence A. Gold, for appellant.

* * * * *

**MAYLE, J.**

**{¶ 1}** Defendant-appellant, Jon Robert Lewis, appeals the November 8, 2021

judgment of the Lucas County Court of Common Pleas, convicting him of felonious

assault and sentencing him to a minimum stated prison term of five years and a maximum

stated prison term of seven and one-half years.  For the following reasons, we affirm.

## I.    Background

{¶ 2}   On the afternoon of July 28, 2021, officers were dispatched to Central Avenue near Murd Road—a two-lane stretch of highway located just west of Sylvania Township—with reports that a Penske box truck had become disabled and was blocking the eastbound lane of travel.  Deputy Sheriff Craig Barth, of the Lucas County Sheriff's Department, arrived at the scene to find that the driver (later identified as Jon Robert Lewis) was not there.  Deputy Barth asked for Sylvania Township police to help locate Lewis.

{¶ 3}   Before Sylvania Township could find him, Lewis returned to the truck. Barth asked Lewis what was wrong with the truck, asked if he had called a tow truck, and asked him for his driver's license.  Instead of answering Barth's questions or presenting his identification, Lewis told him that he was a "child of God."  He went about collecting his personal items from the truck, disregarding Deputy Barth's instructions.  Lewis crossed the highway away from the deputy and started walking toward a nearby church.

{¶ 4}   Barth called for Lewis to come over to him, but Lewis walked further way. Barth jogged over to Lewis and again asked for identification, at which time Lewis turned toward Barth and started shouting, pounding his chest, and pointing his finger in Deputy Barth's face.  Lewis yelled that he was a child of God and repeatedly inquired of Barth and Officer Kurtis Myers, of the Sylvania Township Police Department, whether

2.

they had taken "conscious" or "subconscious" oaths. Lewis gestured towards Barth and Barth tried several times to grab his hand.

{¶ 5} Lewis continued to shout and pound his chest, still ignoring requests that he produce identification. He kept walking away from the officers and threw his elbow and forearm out as if to warn them against approaching him. At this point, Barth grabbed around Lewis's shoulder, spun him towards him, and took him to the ground with the assistance of Officer Myers and two Toledo Metropark Park Rangers—Genzman and Freh—who were also on the scene to assist. Despite Lewis's resistance, the officers ultimately handcuffed Lewis and retrieved his wallet from his back pocket.

{¶ 6} Genzman, Freh, and Myers all tried to calm Lewis down while Barth ran his drivers' license. Barth received word back that Lewis had possible warrants from Bucyrus and Winchester. He asked dispatch to verify. While waiting for verification on the warrants, Barth told Lewis that they were going to take him out of the heat and into the air-conditioned patrol car. The officers put Lewis's slides back on his feet and helped him up from the ground.

{¶ 7} For a few moments, it seemed like Lewis had calmed down and was going to cooperate with Barth's plan. Barth told Lewis that if he had just cooperated in the first place, it would not have gotten to the point of Barth placing him under arrest. Once they got to the side of the patrol car, Lewis said he wanted to sit in the grass. Barth told him he was going to sit in the car. As Barth tried to place Lewis in the vehicle, a scuffle

3.

ensued and Lewis bit Barth's neck, drawing blood. Barth called for medical treatment. EMS responded, treated him at the scene, then transported him to the Mercy Emergency Center in Sylvania Township. His wound was treated and bandaged, a tetanus shot was administered, and he was prescribed an oral antibiotic and ointment. Barth still has a scar from the bite.

{¶ 8} Lewis was indicted on one count of felonious assault of a peace officer, a violation of R.C. 2903.11(A)(1) and (D), a first-degree felony. The matter was tried to a jury, at which time the preceding evidence was presented. Lewis insisted on representing himself in the trial court, however, he did accept assistance from stand-by counsel. He repeatedly declined to wear civilian clothes and appeared for trial in his prison garb. Lewis cross-examined witnesses and testified in his own defense. He requested and was permitted a jury instruction on self-defense.

{¶ 9} The jury found Lewis guilty. The trial court sentenced him to a minimum stated prison term of five years to a maximum term of seven and one-half years. Lewis appealed. He assigns the following errors for our review:

> FIRST ASSIGNMENT OF ERROR: THE TRIAL COURT ERRED IN DENYING APPELLANT'S CRIM.R. 29 MOTION.

> SECOND ASSIGNMENT OF ERROR: THE JURY'S VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED AT TRIAL.

4.

## II.    Law and Analysis

{¶ 10} Lewis's first assignment of error challenges the sufficiency of the evidence, while his second assignment challenges its weight.  We address each of these assignments in turn.

### A.    Crim.R. 29

{¶ 11} Lewis argues that he did not act "knowingly" when he assaulted Deputy Barth; rather, he claims, he "acted upon his self-defense instincts."  He maintains that Deputy Barth did not advise him that he was being placed under arrest, and, in fact, at the time Barth purported to arrest him, he had not committed an arrestable offense.  Lewis insists that he was only trying to defend himself against excessive force used against him in the course of an unlawful arrest.  He emphasizes that he committed the assault while handcuffed and accuses Barth of "clotheslining" him.

{¶ 12} The state responds that Lewis was agitated from the moment of his first encounter with officers, and he walked away despite repeated requests and commands that he return to the scene and provide identification.  It denies that Lewis's arrest was unlawful, but it asserts that even if it was, a private citizen may not use force to resist arrest unless the arresting officer uses excessive and unnecessary force against him; here, the state claims, excessive and unnecessary force was not used against Lewis.  The state insists that Deputy Barth used just enough force to spin Lewis around and to the ground.

5.

It emphasizes that self-defense is an intentional act, therefore, it is inconsistent for Lewis to claim both that he acted in self-defense *and* that he acted unknowingly.

{¶ 13} A motion for acquittal under Crim.R. 29(A) challenges the sufficiency of the evidence. *State v. Brinkley*, 105 Ohio St.3d 231, 2005-Ohio-1507, 824 N.E.2d 959, ¶ 39. The denial of a motion for acquittal under Crim.R. 29(A) "is governed by the same standard as the one for determining whether a verdict is supported by sufficient evidence." *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386, ¶ 37.

{¶ 14} Whether there is sufficient evidence to support a conviction is a question of law. *State v. Thompkins,* 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). In reviewing a challenge to the sufficiency of evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." (Internal citations omitted.) *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997). In making that determination, the appellate court will not weigh the evidence or assess the credibility of the witnesses. *State v. Walker,* 55 Ohio St.2d 208, 212, 378 N.E.2d 1049 (1978). "Rather, we decide whether, if believed, the evidence can sustain the verdict as a matter of law." *State v. Richardson*, 150 Ohio St.3d 554, 2016-Ohio-8448, 84 N.E.3d 993, ¶ 13. Naturally, this requires "a review of the elements of the charged offense and a review of the state's evidence." *Id.*

6.

**{¶ 15}** Importantly, Lewis was not charged with obstruction or with resisting arrest. He was charged only with felonious assault. "[A] lawful arrest is not an element of felonious assault on a peace officer." *State v. Christian,* 7th Dist. Mahoning No. 02 CA 170, 2005-Ohio-1440, ¶ 26. R.C. 2903.11(A)(1) provides simply that "[n]o person shall knowingly * * * [c]ause serious physical harm to another * * *." Under R.C. 2903.11(D)(1)(b), "[i]f the victim of the offense is a peace officer * * * and if the victim suffered serious physical harm as a result of the commission of the offense, felonious assault is a felony of the first degree * * *." The state was, therefore, required to prove that Lewis (1) knowingly, (2) caused serious physical harm, (3) to a peace officer.

**{¶ 16}** Lewis does not argue that he did not cause serious physical harm to Deputy Barth or that Deputy Barth is not "a peace officer" for purposes of R.C. 2903.11(D)(1)(b). He argues only that he did not act "knowingly." He claims that biting Barth was a "self-defense instinct."

**{¶ 17}** "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature * * *." R.C. 2901.22(B). Courts have recognized that absent an admission, whether a person acts knowingly can be determined only from the surrounding facts and circumstances, including the doing of the act itself. *State v. Hendricks*, 6th Dist. Lucas No. L-19-1183, 2020-Ohio-5218, ¶ 19, citing *In re S.C.W.*,

7.

9th Dist. Summit No. 25421, 2011-Ohio-3193, ¶ 18. It is a subjective determination, but it is decided on objective criteria. *Id.*

{¶ 18} Here, the state presented testimony that when Barth attempted to place Lewis in the back seat of the patrol car, Lewis "latched onto [his] neck with his mouth" and did not let go until the other officers pulled him off of Barth. This did not occur while Barth forced Lewis onto the ground to handcuff him; it happened while Barth was being placed in the patrol car. Given the nature of the conduct itself and the location of the bite, it cannot reasonably be claimed that this conduct was inadvertent or unintentional. *See State v. Nadock*, 11th Dist. Lake No. 2009-L-042, 2010-Ohio-1161, ¶ 65 ("Under these (or perhaps any set of facts), it is difficult to imagine how a person could inadvertently or negligently bite another person."). When viewed in a light most favorable to the state, the evidence was sufficient to prove that Lewis knowingly caused serious physical harm to Deputy Barth, a peace officer. *See id.* (finding that regardless of appellant's *purpose*, evidence that he "seized [the victim's] flesh with his teeth" was sufficient to prove that appellant knowingly caused or attempted to cause physical harm to victim). Whether this conduct constituted self-defense goes to the weight of the evidence, not its sufficiency. *See State v. Messenger*, 2021-Ohio-2044, 174 N.E.3d 425, ¶ 43-45 (10th Dist.), *appeal allowed*, 164 Ohio St.3d 1460, 2021-Ohio-3594; *State v. Harvey*, 4th Dist. Washington No. 21CA3, 2022-Ohio-2319, f.n.3; *State v. Woods,* 5th Dist. Stark No. 2021 CA 00132, 2022-Ohio-3339, f.n.2.

8.

{¶ 19} We find Lewis's first assignment of error not well-taken.

## B.    Manifest Weight

{¶ 20} In his second assignment of error, Lewis argues that the state failed to meet its burden of proving that he committed felonious assault and that he did not act in self-defense.  He claims that he was in handcuffs and was entitled to use self-defense to protect himself "from Dep. Barth's unlawful arrest and his overly aggressive and excessive behavior in clotheslining Appellant to the ground."  Lewis states that he did not feel safe in the deputy's car and wanted to sit on the grass where he would be out in the open and visible to the public.  Finally, he maintains that the bodycam video that was admitted into evidence did not fully show the aggression and excessive force used to unlawfully arrest him, there was no indication in the video that he was under arrest, and he could not lawfully be placed under arrest for refusing to answer Deputy Barth's questions or to produce his identification.

{¶ 21} The state responds that the bodycam footage demonstrates that Lewis was in an agitated state from the very beginning of the encounter—yelling, shouting, and pointing his finger in officers' faces—and he acted knowingly when he bit Deputy Barth.  It maintains that Lewis tried to flee the scene while officers attempted to get basic information needed to remove the truck from disrupting traffic, likely because he was aware that he had warrants pending.  The state contends that Lewis was the initial aggressor and the officers did not use excessive force against him, thus self-defense is not

9.

available to him. It denies that Deputy Barth "clotheslined" Lewis; rather, he grabbed Lewis's shoulder and spun him to the ground.

{¶ 22} When reviewing a claim that a verdict is against the manifest weight of the evidence, the appellate court must weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether the jury clearly lost its way in resolving evidentiary conflicts so as to create such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins,* 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). We do not view the evidence in a light most favorable to the state. "Instead, we sit as a 'thirteenth juror' and scrutinize 'the factfinder's resolution of the conflicting testimony.'" *State v. Robinson,* 6th Dist. Lucas No. L-10-1369, 2012-Ohio-6068, ¶ 15, citing *Thompkins* at 388. Reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." *Thompkins* at 387, quoting *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 23} Although under a manifest-weight standard we consider the credibility of witnesses, we must nonetheless extend special deference to the jury's credibility determinations given that it is the jury who has the benefit of seeing the witnesses testify, observing their facial expressions and body language, hearing their voice inflections, and discerning qualities such as hesitancy, equivocation, and candor. *State v. Fell*, 6th Dist. Lucas No. L-10-1162, 2012-Ohio-616, ¶ 14.

{¶ 24} As an initial matter, the bodycam footage, which was admitted into evidence, makes several things clear. First, Lewis repeatedly failed to heed Deputy Barth's commands. He ignored requests that he produce his identification, refused to tell officers whether he had called for a tow truck, and walked away from the officers, all while his large truck sat in the road impeding traffic. Second, Lewis became agitated almost immediately. He began shouting, pointing, gesturing, and pounding his chest in response to the deputy's request for basic information. What should have been a simple conversation quickly—and unnecessarily—devolved into Lewis interrogating the officers about whether they had taken "conscious" or "subconscious" oaths. Third, Lewis did not bite Barth during the course of being arrested—he bit him after he had been arrested and while Barth was trying to guide him into the backseat of the vehicle, about 15 minutes after the scuffle that occurred when Barth tried to handcuff Lewis. The only force that was being applied against Lewis at the time he assaulted Barth was the force required to overcome Lewis's resistance to being placed into the patrol car. Fourth, Lewis was not "clotheslined." To "clothesline" someone means "to knock down (someone, such as a football player) by catching by the neck with an outstretched arm." https://www.merriam-webster.com/dictionary/clotheslined (last accessed Nov. 28, 2022). Here, Barth was positioned slightly behind Lewis, reached around Lewis's shoulder and spun Lewis toward him and to the ground. He did not "clothesline" Lewis.

11.

**{¶ 25}** Lewis argues that his arrest was unlawful. But whether it was or was not is immaterial to the felonious assault charge. This is because, as the jury was instructed, unless an arresting officer uses excessive or unnecessary force, a private citizen may not use force to resist arrest by an authorized police officer, regardless of whether the arrest is illegal. *State v. Whetstone*, 11th Dist. Lake No. 2015-L-114, 2016-Ohio-6989, ¶ 23, citing *Columbus v. Fraley,* 41 Ohio St.2d 173, 324 N.E.2d 735 (1975), paragraph three of the syllabus. "Consequently, if the arrest was unlawful and a citizen forcibly resisted arrest, the citizen may not be subject to prosecution for resisting arrest, but would be subject to prosecution for assault on a peace officer." *Id.* Here, the jury apparently concluded that the deputy did not use excessive or unnecessary force warranting Lewis's use of force. We find that the jury did not lose its way in reaching this conclusion.

**{¶ 26}** Finally, Lewis argues that the state failed to prove that he did not act in self-defense when he bit Barth's neck. "The elements of a valid claim of self-defense are as follows: (1) the defendant was not at fault in creating the situation giving rise to the affray; (2) the defendant had a bona fide belief that he or she was in imminent danger of death or great bodily harm and that his or her only means of escape from such danger was in the use of such force; and (3) the defendant did not violate any duty to retreat or avoid the danger." *State v. Sepeda*, 6th Dist. Lucas No. L-21-1123, 2022-Ohio-1889, ¶ 47, quoting *State v. Petway,* 2020-Ohio-3848, 156 N.E.3d 467, ¶ 41 (11th Dist.).

12.

{¶ 27} Here, the bodycam videos show that Barth was simply escorting Lewis into the patrol car at the time Lewis bit his neck. Accordingly, it was reasonable for the jury to conclude that Lewis did not have a bona fide belief that he was in imminent danger of death or great bodily harm and that his or her only means of escape from such danger was to use of such force. It did not lose its way in rejecting Lewis's claim of self-defense.

{¶ 28} Accordingly, we find Lewis's second assignment of error not well-taken.

### III.   Conclusion

{¶ 29} We conclude that Lewis's conviction of felonious assault of a peace officer was not against the weight or sufficiency of the evidence. When viewed in a light most favorable to the state, the evidence was sufficient to prove that Lewis knowingly caused serious physical harm to Deputy Barth when he bit him in the neck while Barth was placing him in the back of his patrol vehicle. The jury did not lose its way when it rejected Lewis's claim of self-defense or in declining to find that Barth used excessive or unnecessary force against Lewis that would have justified Lewis biting the deputy. We find Lewis's assignments of error not well-taken and affirm the November 8, 2021 judgment of the Lucas County Court of Common Pleas. Lewis is ordered to pay the costs of this appeal under App.R. 24.

Judgment affirmed.

State of Ohio
v. Jon Robert Lewis
L-21-1248

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

_____
JUDGE

Thomas J. Osowik, J.

_____
Christine E. Mayle, J.                                    JUDGE
CONCUR.

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.