[Cite as *State v. Jasso*, 2023-Ohio-209.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
FULTON COUNTY

State of Ohio                                        Court of Appeals No.  F-22-001

　　　　Appellee                                    Trial Court No.  21CR93

v.

Jarred A. Jasso                                      **DECISION AND JUDGMENT**

　　　　Appellant                                   Decided:  January 25, 2023

* * * * *

T. Luke Jones, Fulton County Prosecuting Attorney, for appellee.

Autumn D. Adams, for appellant.

* * * * *

**OSOWIK, J.**

{¶ 1} Defendant-appellant, Jarred Jasso, appeals the December 28, 2021 judgment of the Fulton County Court of Common Pleas which, following a jury trial convicting him of assault on a peace officer, sentenced him to three years of community control.  Because we find that sufficient evidence and the weight of the evidence support the verdict, we affirm.

# I. Procedural and Factual History

{¶ 2} Appellant was indicted on August 16, 2021, on one count of assault on a peace officer, R.C. 2903.13(A) and (C)(5), a fourth-degree felony. The charge stemmed from an incident on July 21, 2021, where a scuffle ensued, including appellant being tased, during police officers' attempts to place appellant under arrest pursuant to a warrant.

{¶ 3} The trial in this matter commenced on November 17, 2021, and the following evidence was presented. Wauseon Police Sergeant Kaleb Torbet testified that on July 21, 2021, he was dispatched to a house in Wauseon, Fulton County, Ohio on a call of an unwanted individual at a private residence. Appellant was identified as the individual. Torbet stated that he had recently run a LEADS check and discovered that appellant had a "possible warrant for his arrest" for failure to appear.

{¶ 4} Upon arrival, Torbet exited his marked patrol vehicle and proceeded across the lawn where he encountered appellant. When asked, appellant stated that he was leaving and that someone in the house had hit him in the arm with a board. Sergeant Torbet observed that appellant was slurring his speech, had bloodshot eyes, and had an odor of alcohol. Torbet then advised appellant of the possible warrant and requested that he turn around with his hands behind his back. At that point, Officer Huner arrived at the scene.

{¶ 5} Torbet stated that as he attempted to get appellant's right arm behind his back, Huner grabbed at his left arm, appellant threw the water bottle he was holding and crouched down in what Torbet interpreted as a fighting stance. At that point, the officers

2.

took him to the ground and rolled him over, attempting to get him stomach down to gain control.  Torbet said that appellant ended up crouched with his legs underneath him.

{¶ 6} Torbet testified that appellant was able to "wrap up" Huner's leg; Huner disengaged and proceeded to activate his taser on appellant's upper and lower right side.  Torbet stated that appellant rolled over, looked at him, and punched him "relatively hard" in the center of his forehead.  As the officers were rolling him back on his stomach, Torbet got tangled in the wire and "caught some of the tasing."  After appellant was secured, Torbet stated that medical personnel were called to remove the probes from appellant's body.  He was then placed under arrest.

{¶ 7} Sergeant Torbet stated that following the incident and after the adrenaline wore off, his head was hurting and he had a red mark and a large bump on his head which remained approximately one week.  Torbet stated that his headache lasted a day.

{¶ 8} Torbet testified that during the incident his body camera was on and recording; the video was played for the jury.  Officer Huner also activated his bodycam; a portion of the video was also played for the jury.  Torbet testified to the events as they unfolded in the video.  It is undisputed that the bodycam videos do not clearly depict appellant punching Sergeant Torbet.  Witnesses to the incident were given statement forms to fill out; they were never returned.

{¶ 9} During cross-examination, Torbet acknowledged that appellant's warrant for failure to appear was a "non-violent" warrant but stated that this is no indication as to whether an individual will be violent when an arrest is attempted.  Sergeant Torbet also

3.

acknowledged that when he arrived on the scene appellant was preparing to leave the premises. He agreed that he did not immediately tell appellant why he asked him to turn around and put his hands behind his back.

{¶ 10} Torbet was questioned about the effects of being correctly tased. He stated that your body "locks up" and becomes rigid. In other words, your body cannot move. Torbet stated that a taser deployment is good for five seconds. He was then replayed a portion of Officer Huner's bodycam video. Appellant was tased at 2:18; Torbet had previously testified that he was punched at 2:20/2:21. Acknowledging that it was less than five seconds, Torbet stated that appellant's tasing experience differed from what he had seen previously though he agreed that his arched back and straight arms were typical. Torbet again stated that appellant hit him with a closed fist and relatively hard even though he admitted that he did not remember being hit. He also agreed that appellant's hand appeared to be open as he was bringing it back down from the point on the video when Torbet said he was punched.

{¶ 11} Upon further questioning by the court, Sergeant Torbet explained that the first taser deployment hit appellant's hip which, due to the close proximity of the probes, did not result in widespread immobilization. The second deployment, hitting up higher on the body, had a better spread of the probes and was more effective.

{¶ 12} The second responding Wauseon Police Officer, Patrolman Mitchell Huner, testified extensively about the operation of the police taser and its effect on the body. Huner indicated that he had prior instances where he deployed his taser but the

4.

connection was not effective. Huner stated that in another case involving close proximity to the suspect, the probes did not spread far enough apart to impact the whole body.

{¶ 13} As to the events involving appellant, Officer Huner testified that he walked up to Sergeant Torbet as appellant was informed that he may have an arrest warrant and Torbet instructed him to put his hands behind his back. Huner stated that appellant repeatedly refused and flexed his arms up in front of his chest. Huner stated that at that point he grabbed on to appellant, placed his leg between his legs, and brought him down to the ground on his back.

{¶ 14} Officer Huner stated that once rolled over appellant got in a crouched position, grabbed a hold of his leg, and applied pressure to Huner's knee with his shoulder. Huner stated that he punched appellant which caused him to loosen his grip and he was able to untangle his leg.

{¶ 15} After being warned by Sergeant Torbet that he would be tased, Officer Huner deployed the taser at close range. Huner stated that the probes would have had about a one-to-two-inch spread. He immediately moved to appellant's back shoulder area and deployed a second set of probes with the hope that the combination would act to immobilize appellant. Appellant rolled over and, according to Huner, connectively was lost as to one set of probes. This was evidenced by appellant's attempt to grab the taser. Huner then applied a dry, or direct, tase to appellant's chest area. Appellant continued to resist so Huner applied the taser directly to appellant's right arm. Officer Huner stated that he did not see appellant strike Sergeant Torbet but did see red marks on his forehead

5.

and around his eye area that he had not previously observed. Officer Huner narrated the playing of his bodycam video.

{¶ 16} During cross-examination, Huner agreed that appellant was resisting arrest and that taser use was authorized per department policy. He acknowledged that he did not observe appellant punching anyone. He further acknowledged that, in theory, the taser should have been working properly to immobilize appellant. The state then rested. The court alluded to a Crim.R. 29 motion being raised but it was not evidenced in the record.

{¶ 17} Appellant presented the testimony of Damian West, a guest at the residence who witnessed the events at issue. He similarly recounted that appellant did not comply when the officers told appellant that he had a warrant and to put his hands behind his back. West also stated that the trio began wrestling once the first officer grabbed appellant's hand and put it behind his back and the second officer put his leg behind him and "kicked" him down to the ground.

{¶ 18} After continued wrestling, the officers threatened to taser and did taser appellant "probably about three times." West stated that it was continuous for approximately a minute based on the clicking noise he heard. West testified that while they were tasing him and he was down on his hands and knees; he was still not complying so one of the officers swung at him twice and missed.

{¶ 19} West denied that that appellant ever swung at (or clenched his fist) or kicked either of the officers. He stated that appellant was being tased for so long that his

6.

arms, with open hands, were "flaring" or had seized up and that he was grunting and calling for help. West denied hearing any statements by the officers about being hit and did not see any injuries.

{¶ 20} On cross-examination, West admitted that appellant is a relative by marriage and family friend. West stated that it was apparent that appellant had been drinking that night because he was slurring his words. He acknowledged that appellant and the homeowner had been arguing and that when the officers arrived appellant was preparing to leave. West stated that appellant had been upset, but that he did not feel that it was cause for concern.

{¶ 21} The evidence then concluded and the jury began deliberations; they were able to review the bodycam videos and photographic evidence. Appellant was found guilty of the charge and, following sentencing, commenced the instant appeal.

## II. Assignment of Error

{¶ 22} The finding of guilty of assault was against both the sufficiency of the evidence and the manifest weight of the evidence.

## III. Discussion

{¶ 23} Sufficiency of the evidence is a legal standard that tests whether the evidence introduced at trial is legally sufficient to support a verdict. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). We examine the evidence in a light most favorable to the state and decide whether any rational trier of fact could have found that the state proved, beyond a reasonable doubt, all of the essential elements of the

7.

crime. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), *superseded by state constitutional amendment on other grounds as stated in State v. Smith*, 80 Ohio St.3d 89, 684 N.E.2d 668 (1997); *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, 767 N.E.2d 216, ¶ 78.

{¶ 24} Whether the evidence is legally sufficient to sustain a verdict is a question of law. *Thompkins* at 386. In determining whether a conviction is based on sufficient evidence, an appellate court does not assess whether the evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. *See Jenks* at paragraph two of the syllabus; *Yarbrough* at ¶ 79.[1]

{¶ 25} In contrast, "'[w]hen a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "thirteenth juror' and disagrees with the fact finder's resolution of the conflicting testimony.'" *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, quoting *Thompkins* at 387. In determining whether a conviction is against the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether, in resolving any conflicts in the evidence, the jury clearly lost its way

---

[1] We do acknowledge that appellant failed to make a Crim.R. 29 motion for acquittal at the conclusion of the trial. However, this court had held that whether a sufficiency of the evidence claim is reviewed under prejudicial or plain error is "academic" because a conviction resting on legally insufficient evidence is a denial of due process. *State v. Hermann*, 6th Dist. Erie No. E-01-039, 2002-Ohio-7307, ¶ 24, quoting *Thompkins* at 386-387.

8.

and thereby created such a manifest miscarriage of justice that the conviction must be reversed and a new trial must be ordered. *Thompkins* at 387, citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). A conviction should be reversed on manifest weight grounds only in the most "'exceptional case in which the evidence weighs heavily against the conviction.'" *Id.*, quoting *Martin* at 175.

{¶ 26} Appellant was convicted of assault on a peace officer, R.C. 2903.13(A)(C)(5), which provides:

> (A) No person shall knowingly cause or attempt to cause physical harm to another or to another's unborn.
>
> * * *.
>
> (C)(1) Whoever violates this section is guilty of assault, and the court shall sentence the offender as provided in this division and divisions (C)(1), (2), (3), (4), (5), (6), (7), (8), (9), and (10) of this section. Except as otherwise provided in division (C)(2), (3), (4), (5), (6), (7), (8), or (9) of this section, assault is a misdemeanor of the first degree.
>
> * * *
>
> (5) If the victim of the offense is a peace officer or an investigator of the bureau of criminal identification and investigation, a firefighter, or a person performing emergency medical service, while in the performance of their official duties, assault is a felony of the fourth degree.

{¶ 27} Knowingly is statutorily defined as when

the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

R.C. 2901.22(B). Absent an admission, whether a person acts knowingly may be determined solely from the surrounding facts and circumstances, including the doing of the act itself. *State v. Hendricks*, 6th Dist. Lucas No. L-19-1183, 2020-Ohio-5218, ¶ 19, citing *In re S.C.W.*, 9th Dist. Summit No. 25421, 2011-Ohio-3193, ¶ 18. It is a subjective determination, but it is decided on objective criteria. *Id.*

{¶ 28} Physical harm is defined as "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3). Physical harm is "requires some manifestation of harm to the officer, whether it be in the form of a visible or objective injury, or in the form of pain." *State v. Brown*, 6th Dist. Lucas No. L-18-1140, 2020-Ohio-1650, ¶ 20

{¶ 29} Reviewing the evidence in a light most favorable to the prosecution, we find that appellant's assault conviction is supported by sufficient evidence. Sergeant Torbet testified that appellant looked directly at him and then hit him in the head with a

closed fist.  The bodycam video does evidence a point where appellant's hand goes in the direction of Torbet's head.  Following the incident Torbet, on his bodycam video, states: "My head hurts."  Further, when speaking with witnesses he says: "Sorry, I got hit in the head, so * * *."  Further, the photographs admitted into evidence clearly show an injury, redness and swelling, to Torbet's forehead consistent with his trial testimony.

{¶ 30} Turning to appellant's manifest weight claim, we find that although there were some inconsistencies in the testimony, the jury could have reasonably concluded that appellant rolled over on his back and knowingly hit Sergeant Torbet in the face and that he suffered physical harm.  While the bodycam videos do not clearly depict the punch, Sergeant Torbet was able to pinpoint when the punch occurred.  The difficulty in capturing the assault on camera can be attributed to the fact that the officers were in close proximity to appellant, with the video intermittently blacked out due to it being covered by one of the parties, as the scuffle took place.  Accordingly, we cannot find a manifest injustice warrants reversal.

{¶ 31} Based on the foregoing, we find that appellant's conviction was supported by sufficient evidence and was not against the weight of the evidence.  Appellant's first and second assignments of error are not well-taken.

## IV. Conclusion

**{¶ 32}** For the reasons set forth above, the judgment of the Fulton County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.                   _____
                                                   JUDGE

Christine E. Mayle, J.

                                              _____
Myron C. Duhart, P.J.                   JUDGE
CONCUR.

                                              **_____**
                                                   JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.